Crane *v.* Crane.

ELIZABETH A. CRANE

*v.*

J. TOWNLEY CRANE.

[Filed July 16th, 1901.]

1. When a bill in equity for the annulment of a marriage for a cause not within the Divorce act has been taken *pro confesso* in the absence of any special rule on the subject, the proper practice is to take an order directing complainant to produce proof to sustain the allegations of the bill and to set down the cause for hearing.

2. To annul a marriage for a fraudulent representation inducing the contract, it must be shown that the fraud affected an essential of the marital relation.

3. An explicit statement by a man about to be married that he was not afflicted by the loathsome disease called syphilis, made when it was his duty to state the truth, and knowingly false, is such a fraudulent representation as affects an essential of the marital relation.

4. A decree in such a case should not be made upon the uncorroborated evidence of the complainant.

On bill for annulment of marriage.

*Mr. David Harvey, Jr.,* for the complainant, *ex parte.*

MAGIE, CHANCELLOR.

The bill in this cause seeks a decree annulling the marriage of the complainant with defendant, upon the ground that the matrimonial contract between them was entered into by complainant under the inducement of a false and fraudulent representation made by defendant.

The jurisdiction thus invoked is not that conferred upon this court by the provisions of the "Act concerning divorces," approved March 27th, 1874. *Gen. Stat. p. 1267.* The appeal is to the general jurisdiction over frauds which is inherent in this court and extends to the annulment of the marriage contract upon the ground of fraud.

Crane v. Crane.

That the jurisdiction of this court extends so far has been settled by our court of errors. *Carris* v. *Carris, 9 C. E. Gr. 516.* Such jurisdiction had been previously asserted by that eminent equity judge, Chancellor Green. *McClurg* v. *Terry, 6 C. E. Gr. 226.* Since those decisions it has been frequently recognized in this court, and, in some cases, made the basis of decrees annulling marriages. *Sickles* v. *Carson, 11 C. E. Gr. 440; Stales* v. *States, 10 Stew. Eq. 195; Seilheimer* v. *Seilheimer, 13 Stew. Eq. 412; Sinclair* v. *Sinclair, 12 Dick. Ch. Rep. 222.* The doctrine of the English courts has lately been declared to be different, and the American cases, including *Carris* v. *Carris,* were criticised and disapproved. *Moss* v. *Moss, Prob. 1897 p. 263.*

The only question then is, whether the case presented justifies the exercise of the jurisdiction and the decree prayed for.

The subpœna which issued upon the filing of the bill was not served upon the defendant, but was returned with proof that he was a resident of the State of New York. He has been brought into court solely by publication and mailing of notice to him at his foreign residence, pursuant to the statute and the practice of this court.

Since the defendant did not appear or make any defence, the solicitor of the complainant, conceiving that the cause fell within the settled practice in causes under the Divorce act, presented an order of reference to a special master, which was inadvertently signed. The special master named therein made a report and accompanied it with depositions taken before him under rule 164. This practice was irregular. Since the relief sought was not under the Divorce act, but under the general jurisdiction of the court, the proper practice, in the absence of any special rule on the subject, would have been to take an order directing complainant to produce proofs to sustain the allegations of her bill, and upon the coming in of such proofs, to set the cause down for hearing under section 18 of the Chancery act. *Gen. Stat. p. 405 § 172.* When the irregularity was discovered, complainant was given the option to take such order or to set the cause down for hearing upon the depositions taken before the special master, as if taken under the proper order. She

Crane *v.* Crane.

elected to set the cause down for hearing, and it was thus heard and considered.

The proofs before me present the following case:

In 1892, complainant, who resided and has continued to reside, in New Jersey, became acquainted with the defendant and engaged to marry him. Pending the engagement, a female friend of the complainant informed her that defendant was then suffering from the loathsome disease called syphilis, and urged complainant not to marry him. Complainant told defendant the information she had received respecting his condition. He indignantly and specifically denied it to her. As to the denial at that time the proof rests only upon her evidence. Defendant immediately went, accompanied by the complainant, to the person who had given her the information. In her presence defendant denied being diseased, and offered to submit to examination by any physician selected by complainant. This person was called as a witness and corroborates complainant as to what took place at the interview. While it does not appear that the nature of the disease which he denied was mentioned or described in that interview, I do not think that it admits of doubt that he understood that he was charged with being affected with a loathsome disease which would render the marriage with complainant improper and impossible, and that his denials were directed to that charge.

Complainant testifies that, believing the explicit denials of the defendant, she married him on July 23d, 1893. In May, 1894, she discovered that he was diseased, and charged him with having syphilis. He acknowledged that he had the disease and had had it for fourteen years. Proof of this acknowledgment depends solely on complainant's evidence.

After this acknowledgment complainant ceased to have marital intercourse with the defendant, but retained him in the house in which they resided (which was hers) and ministered to his wants until his condition became so horribly offensive that she declined further care of him, and in October, 1896, he left her and never returned. The circumstances of the separation have been held not to justify a divorce for desertion. *Crane* v. *Crane,* *45 Atl. Rep. 270.*

The depositions of two physicians are among those before me. One of them testifies that he first treated defendant for syphilis in 1892, which was before the marriage. The other testifies that he first treated defendant in 1894, when he found the disease to be in such a stage as to indicate, in his opinion, that it had existed prior to the marriage. Upon this evidence I deem it to be established that the defendant was diseased before his marriage and that his disease was syphilis. While neither physician testifies that he informed defendant that his disease was syphilis, the whole evidence, in my opinion, justifies the inference that the defendant actually knew that the disease for which he was treated in 1892 was syphilis, rather than some other and less noxious form of venereal disease.

Upon the proofs, complainant insists that defendant's denial was a denial that he had the disease in question, and that it was both false and fraudulent; that it operated to dispel the suspicions of complainant which had been aroused by the information she had received and induced the marriage afterward entered into; and that for the fraud thus manifested, this court should declare, by its decree, that the marriage contract was null and void, as if never made.

The contract of marriage is one of exceptional and peculiar character. It may not be abrogated and avoided by the parties thereto as other contracts may be. On grounds of public policy, this state has an interest in the *status* created by a marriage contract, and when made it can only be dissolved on grounds and by judicial proceedings sanctioned by law.

An action for nullity is said to be of two sorts—one, where its purpose is to procure a decree making void a voidable marriage; the other, where the marriage is in fact void, its purpose is to procure a decree declaring it to be so. See *2 Bish. Mar., D. & S. § 794; A.* v. *B. L. R., 1 Perry & D. 559.* The present action is of the former kind.

In *Carris* v. *Carris, ubi supra,* the court of errors recognized that in a proceeding to annul a marriage apparently created by contract, for the reason that the contract was induced by fraud, a like public policy was incidentally involved. While asserting and exercising the jurisdiction to decree a marriage void for

fraud, the court distinguished a proceeding seeking such a decree from the ordinary case seeking equitable relief against contracts induced by fraud. The doctrine laid down in the prevailing opinion of Mr. Justice Bedle was that, while a court of equity would ordinarily set aside any contract which had been entered into by the inducement of fraud, yet a marriage contract would not be annulled except upon proof of such fraud as extended to and affected some essential of the marital relation, and not then if the avoidance of the marriage contract would be against sound considerations of public policy. It was declared that extraordinary fraud would alone justify the avoidance of the marriage contract. The doctrine was applied in that case to the following circumstances: The defendant, a woman, by concealing the fact that she was pregnant with child by another man, had induced the complainant to contract marriage with her. Since at the time of the contract and for the period of gestation under the impregnation of another person she was incapable of being impregnated by complainant, it was deemed that an essential of the marital relation, viz., the ability to propagate, was affected by the concealment, which was fraudulent. Since the contract, if not annulled, compelled complainant to accept the spurious issue as his own or to repudiate it with the result of marital estrangement, it was held that public policy did not forbid, but rather required, the avoidance of the marriage contract which was induced thereby.

In the case before me there is no evidence, expert or otherwise, that the disease with which defendant was suffering at the time of the marriage had rendered him incapable of begetting children. It is contended, as one ground for the relief asked, that it is matter of common knowledge, of which the court should take notice, that children begotten by one so diseased inherit the disease.

While the proofs do not establish a case exactly parallel with that presented in *Carris* v. *Carris,* there is expert evidence, which is entirely convincing, that at the time of the marriage, and thereafter, marital intercourse between the parties could only take place at the imminent risk of communicating the foul disease to the healthy party, the complainant.

The question then is whether, if the proofs establish a fraudulent representation by defendant of freedom from the disease of syphilis, the fraud is to be adjudged to affect an essential of the marriage relation.

Misrepresentation as to freedom from disease in general or concealment of the existence of a disease, although one in common apprehension communicable and transmissible to offspring, cannot, in my judgment, be so regarded. They fall within the line of false representations as to family, fortune or external condition, declared by Mr. Justice Bedle to be insufficient to justify the annulment of marriage. As to such and like matters the parties take each other for better or for worse. *1 Bish. Mar., D. & S.* § *457.* But as to a fraudulent representation of freedom from syphilis, I have reached a different conclusion. When a wife has discovered that her husband is infected with that disease, this court has held, in accord with decisions elsewhere, that she is justified in refusing to permit marital intercourse, and when he knowing, or having reason to believe, he is infected, persists in maintaining marital intercourse with her, he is guilty of extreme cruelty, for which a divorce will be decreed. *Cook* v. *Cook, 5 Stew. Eq. 475.* Discovery of the existence of that disease ought to produce and would produce a denial of marital intercourse, and consequently render impossible the procreation of children of the marriage. In that view the fraud in question touches an essential of the marital relation under the doctrine of *Carris* v. *Carris.* Nor do any considerations of public policy debar a party, imposed on by such fraud and induced to enter into a marriage contract, the continuance of which must produce results so disastrous, from the relief of a judicial declaration that the contract is null and void.

It remains to be considered whether the proofs make out a case of such fraud as will require this court to annul this marriage.

In dealing with the proofs, I think a decree ought not to be made upon the unsupported evidence of the complainant. If proof, essential to the adjudication, rests wholly upon her evidence, uncorroborated by others or by circumstances, her

Crane *v.* Crane.

case must fail.   Such is the rule in respect to divorce cases
announced by this court and sanctioned by the court of errors.
*McShane* v. *McShane, 18 Stew. Eq. 341; Costill* v. *Costill, 2
Dick. Ch. Rep. 346.*   For like reasons a decree annulling mar-
riage must be considered as requiring such proof.

As before stated, the evidence is convincing that defendant
was affected with syphilis at and before the time of the marriage.

But the mere existence of that foul disease in one of the
parties to a marriage contract, although it tended to render,
and upon discovery would render, impracticable the purpose of
marriage, would not, in my judgment, justify a decree annul-
ling the marriage.   In respect to incurable impotency existing
at the time of marriage, this court held that such disability
rendered the marriage voidable but not void, and it was declared
that, outside the statutory jurisdiction, this court would not
annul a marriage contract except when it was void.   *Anon,
9 C. E. Gr. 19.*   Whether since the decision of the court of errors
in *Carris* v. *Carris, ubi supra;* the doctrine could be maintained,
may be perhaps doubted, and need never be decided, since the
legislature has now made such impotency cause for divorce.

It must therefore, in my judgment, appear by appropriate and
sufficient proof that the defendant either represented to com-
plainant that he was free from syphilis, or that he concealed
the fact that he had syphilis when he was in duty bound to
disclose it.

The case made by the bill and claimed to be supported by
proof, rests upon an express representation by defendant that
he was not affected by that disease.   The complainant's testi-
mony expressly asserts that such a representation was made.
In this respect, I think there is support and corroboration of
complainant in the deposition of the friend of complainant with
whom defendant sought an immediate interview, after being told
of the information complainant had received from her.   While it
does not appear that the disease was named by any one present
at the interview, defendant evidently knew that he was charged
with being diseased, and with a disease which would justify
and require the breaking of the engagement of marriage.   His
denial was aimed at such a disease, and was couched in such

terms as would not naturally have been used for an accusation of a less dangerous disease.

But proof to justify a decree in this case must, in my judgment, show more than a mere representation of the truth of a fact which was actually false. Mr. Pomeroy points out that, while whatever is fraudulent at law will be so also in equity, there are frauds of which equity takes cognizance although the law would not, such as for example, constructive frauds, and what he calls actual frauds, although they are without any feature or incident of moral culpability. *2 Pom. Eq. Jur.* § *385 et seq.* The distinction was recognized in the opinion of the present chief-justice. *Cowley* v. *Smyth, 17 Vr. 380.*

In the case in hand, equity ought not to act upon any mere construction of fraud from conduct. To move its hand to obliterate this marriage contract for defendant's representation, it must appear that the defendant possessed a guilty knowledge of its untruth, or that, being called upon to state the truth as to a fact, under circumstances which cast upon him a duty to do so, defendant stated that to be true which in fact was false and known to him to be false. He was called on to state the truth about a fact in respect to which he might be supposed to have knowledge. The demand upon him came from one who was engaged to marry him, and its obvious purpose was to ascertain the truth as to a fact important for her to know, for if true, it would have justified her in receding from her engagement. The circumstances cast upon him a duty. If his response to her demand was knowingly false, it was a gross fraud. As I find his denial to have been false and knowingly false, and that it operated to produce a marriage under circumstances which affected an essential of the marriage relation, I conclude that the complainant is entitled to relief and to a decree annulling her marriage with defendant.