### SOBOL v. SOBOL.

(Supreme Court, Special Term, New York County.   December 7, 1914.)

1. MARRIAGE (§ 58*)—ANNULMENT—GROUNDS—FRAUD CONCERNING HEALTH.
   It was fraud, justifying the annulment of a marriage, for the man to conceal the fact, known to him, that he was afflicted with tuberculosis, and to represent to the woman that certain symptoms were the manifestations of a cold, in view of the danger of infection to those in close contact with a person afflicted with tuberculosis, and the danger that the children of such a person will have a strong predisposition to such disease, especially where there were no children, the woman would not have entered into the marriage, had she known the facts, and upon learning the truth, a few days subsequent to the marriage, she left the man, and thereafter did not live with him.
   [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. § 58.*]

2. MARRIAGE (§ 60*)—ANNULMENT—GROUNDS—FRAUD.
   As a general rule, any misrepresentation of a material fact incidental to the contract of marriage is sufficient to avoid it; but the courts, in the exercise of a sound discretion and with regard to public policy, must determine whether the misrepresentations and the probable consequences to be expected are of sufficient importance to require a dissolution of the contract, in the interest of the parties and that of the public at large.
   [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 125–128, 130–135; Dec. Dig. § 60.*]

3. EVIDENCE (§ 14*)—JUDICIAL NOTICE—SCIENTIFIC FACTS.
   In an action to annul a marriage for fraudulent concealment of the fact that the man was afflicted with tuberculosis, the court will take judicial notice of the infectious and hereditary characteristics of tuberculosis.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 19; Dec. Dig. § 14.*]

Action by Sarah Sobol against Joseph Sobol to annul a marriage on the ground of fraud.   On the taking of an inquest.   Judgment for plaintiff.

P. J. Knobloch, of New York City, for plaintiff.
Brown & Boskey, of New York City, for defendant.

BLANCHARD, J.   [1] It is established that the defendant in this action was treated for tuberculosis prior to the time of his marriage and knew that he was suffering from the disease.   Subsequently he was married to the plaintiff, and she has testified that the defendant represented to her prior to the marriage that certain symptoms which he displayed were the manifestations of a cold.   It furthermore appears that within a few days subsequent to the marriage the defendant's condition was such as to require the attention of a physician, who then diagnosed his case as tuberculosis, and that thereafter the plain-

tiff no longer continued to cohabit with him. There are no children of the marriage. The defendant since his marriage has continued to show symptoms of tubercular trouble, and upon the advice of his physician has gone West for the purpose, if possible, of becoming cured. The physician further testifies that in his opinion the defendant is incurable. This action is now commenced for the annulment of the marriage, upon the ground that the defendant, knowing himself to be afflicted with tuberculosis, was guilty of fraud in concealing from and misrepresenting to the plaintiff the actual facts of his condition. These facts, the plaintiff asserts, would have precluded her from entering into the marriage, had she known of them. No defense was offered, and the question to be determined, therefore, is whether these facts are sufficient to move the court to grant a decree. No case has been brought to my attention in this state, nor have I been able to find any, which directly determines the question.

[2] As a general proposition, the rule may be stated to be that any misrepresentation of a material fact incidental to the contract of marriage is sufficient to avoid it. It is not, however, to be inferred from this language of the appellate courts that every misrepresentation of fact, even though made material by either of the parties, is of sufficient weight. It is for the court, in the exercise of sound discretion and with regard to public policy because of the peculiar nature of the contract, to determine whether or not the misrepresentations of fact and the probable consequences to be expected because of these misrepresentations are of sufficient importance to cause the court to exercise its power to dissolve the contract in the interest of the parties and that of the public at large. In numerous cases the courts of this state and of other states have held that the fraudulent concealment of a venereal disease is sufficient ground for the annulment of the contract of marriage upon the ground of fraud. The view which the courts have adopted is that the presence of such a disease is not only liable to cause contagion from the marital relation, but is also fraught with danger to the offspring of such union, and, as the court says in Svenson v. Svenson, 178 N. Y. 54, 70 N. E. 120:

"The disease is one involving disgrace in its contraction and presence, contagion in marital association, and includes danger of transmission and heredity that even science cannot fathom or certainly define."

In the case at bar the disease from which it is claimed the defendant suffered is not a disease which so closely affects the marriage relation as a venereal disease. If, however, it is such a disease that, through the close tie of the marital relation, grave and disastrous results from infection may be caused to the other party, and possible evil consequences to the offspring of such a union, I think it of sufficiently grave character to bring it within the purview of the rule applicable to venereal disease.

[3] No evidence as to the character and probable consequences of infection, either to a party to such marriage or to its offspring, is before the court; nevertheless I feel that it is proper for the court, in view of the widespread prevalence of tuberculosis and the disastrous consequences to those who suffer from it, to take judicial notice of its

characteristics for the purpose of this discussion. There can be no doubt that tuberculosis is a disease of an infectious character, and that close association with a person afflicted with that disease, unless attended by great care, occasions danger of infection to those coming into close contact with such person. While it may be that such care is possible in the marital relation, nevertheless I do not think it should be the policy of the courts to sustain the obligations of a union which would entail the burden and danger that would follow under the circumstances, and where there can be no sure method of preventing an infection. Furthermore, there is little doubt that the offspring of a person afflicted with tuberculosis, while not born infected, are born with a strong predisposition to becoming infected, and succumb with greater readiness to its ravages. Although it is true that tuberculosis is not a disease which involves "disgrace in its contraction and presence," certainly it is one that "includes danger of transmission and heredity that even science cannot fathom or certainly define." Svenson v. Svenson, supra. As was said in Di Lorenzo v. Di Lorenzo, 174 N. Y. 467, 67 N. E. 63, 63 L. R. A. 92, 95 Am. St. Rep. 609, wherein Judge Gray laid down the general rule in respect of the annulment of marriage on the ground of fraud:

"It is obvious that no one would obligate himself by a contract, if he knew that a material representation, entering into the reason for his consent, was untrue."

It would seem that in the case at bar, had the plaintiff known the true condition of the defendant's health, which he misrepresented to her, she would not have entered into the contract, involving as it did the danger of herself, as well as any offspring that might be born, becoming infected with the disease. For the foregoing reasons, it would seem that there was a misrepresentation of a fact of sufficient weight for the courts, from the standpoint of public policy, not only because of its possible effect upon one of the contracting parties, but also upon their posterity, to declare the contract void.

Facts of a somewhat similar nature to those at bar are to be found in the case of Gumbiner v. Gumbiner, 72 Misc. Rep. 211, 131 N. Y. Supp. 85; but I think, from an examination of the decision in that case, that it affords no precedent here. Some stress seems to be laid in the decisions in respect of venereal disease upon the fact that the marriage in the majority of those cases was not consummated by cohabitation, and thus the mere contract itself did not result in a status. As was said in Svenson v. Svenson, supra:

"If, before children are begotten, before debts are created, real estate involved, and the community have long recognized the relation, the injured party seeks relief from fraud, error, or duress, it seems clear that no consideration of public policy will prevent a court from annulling a marriage, where the relation has not fully ripened into the complications of a public status."

In the case at bar cohabitation, if it resulted at all, was certainly of short duration, and terminated immediately upon the discovery of the true facts in the case. For this reason, it would seem to the court that no status, in the sense of a subsisting marriage, was established, but that, if anything, the relationship was little more than a simple

contract, and for this reason voidable for material misrepresentations. It would seem to me a gross perversion of justice to refuse to release a party from a matrimonial contract whereby no important status affecting the relationship of the parties to the general public or to each other has been established, in the face of a situation which, as between the parties and the probable normal result of their continuing union, is attended with an element of such grave potential results.