ROSE M. ULLMAN DAVIS, petitioner,

*v.*

JACOB S. DAVIS, defendant.

[Decided March 12th, 1919.]

1. A court of equity has inherent jurisdiction, independent of statute, to annul a marriage on the ground of fraud. *Carris* v. *Carris, 24 N. J. Eq. 516,* followed.

2. Power in some established court will be found to secure any civil right or redress any civil wrong.

3. The fraud for which a court of equity will annul a marriage must be extraordinary, of an extreme kind and with respect to an essential of the contract, and the court will not grant relief where, even if the fraud be present, to vitiate the marriage, would be against good policy, sound morality and the peculiar nature of the marriage relation.

4. If a party to a marriage is imposed upon by false representations of the other party, a court of equity will annul the marriage unless it appears that to annul it would be against good policy, sound morality and the peculiar nature of the marriage relation, and every case must be determined according to its own facts.

5. The suppression by one party of the fact that he is suffering from a disease which renders the close intimacy of the marriage relation dangerous to the other, and which may result in a transmittal of the disease to offspring, is such fraud as will warrant a court of equity in annulling a marriage.

6. Where, at the time of marriage, defendant husband was suffering from hereditary chronic tuberculosis and did not inform petitioner of the fact, for the reason that he feared, if he did, she would not marry him, and it appears that if she had been so informed she would

not have, in fact, married him, there was such fraud as will warrant the court in annulling the marriage, notwithstanding the fact that the parties lived together as husband and wife for a period of six months, until the discovery by the wife of the existence of the disease, and notwithstanding the fact that there was a child born, which only lived for four days, where it appeared that, immediately upon the discovery of the existence of the disease, petitioner ceased cohabitation.

On petition for annulment of marriage. On exceptions to master's report.

*Mr. William Harris,* for the petitioner-exceptant.

LANE, V. C.

I find the fact as follows: Petitioner and defendant were married May 2d, 1916; petitioner is now twenty-five years of age; the parties lived togther as husband and wife until November, 1916; from November, 1916, to about April or May, 1917, they resided together in Caldwell; there was, during the latter period, no sexual relations; in April or May, 1917, a child was born which lived only for four days; defendant immediately after the birth of the child went west for his health; there have been no sexual relations since November, 1916; defendant, at the time of the marriage was, to his knowledge, suffering from chronic tuberculosis; his father had died of tuberculosis prior to the marriage; defendant did not inform his wife of his condition; he concealed it because of a fear on his part that if he told her she would not marry him; the death of the father was falsely represented to the wife, prior to the marriage, as due to pneumonia; petitioner did not discover that defendant was suffering from tuberculosis until November, 1916, and immediately upon the discovery ceased cohabitation; the medical testimony is to the effect that tuberculosis is an infectious, contagious disease transmissible to offspring; if the disease itself is not transmitted there is grave danger that offspring will be predisposed to the disease. The learned special master found the facts substantially as I have found them, but declined to recommend a decree (and very properly, I think) because of the want of a precedent in this state. The power of this court,

independent of any statutory grant, to dissolve a marriage on the ground of fraud, is unquestioned. Carris v. Carris, 24 N. J. Eq. 516; Vanderbilt v. Mitchell, 72 N. J. Eq. 910 (at p. 918). The court, in the first case, intimated that power in some established court would be found to secure any civil right or redress any civil wrong. In referring to the nature of the fraud which would be sufficient to warrant the court in avoiding a contract of marriage, the court of errors and appeals held that it must be extraordinary, of an extreme kind, and with respect to an essential of the contract. That the general principle that fraud in a material part vitiates a contract, does not apply with full force to the marriage contract, after consummation and the establishment of a status at least, for the reason (and solely for the reason) that the contract of marriage is sui generis in many respects and should not be vitiated even if fraudulent, when to vitiate it would be against good policy, sound morality, and the peculiar nature of the relation. The court further said that false representations in regard to family, fortune or external conditions are not sufficient. In Crane v. Crane, 62 N. J. Eq. 21, Chancellor Magie held that a false representation with respect to freedom from syphilis was such fraud as would warrant the intervention of the court. In this opinion he stated, obiter: "Misrepresentation as to freedom from disease in general or concealment of the existence of a disease, although one in common apprehension communicable and transmissible to offspring, cannot, in my judgment, be so regarded"—that is, be regarded as fraud which effects the essential of the marriage contract. He stated that in his judgment such representations fall within the line of false representations as to family, fortune or external condition, declared by Mr. Justice Bedle to be insufficient in Carris v. Carris to justify the annulment of marriage. The chancellor referred to diseases which were communicable and transmissible "in common apprehension." His remarks, I think, cannot be said to apply to diseases not only communicable and transmissible "in common apprehension," but which have been demonstrated to be communicable and transmissible by science. In Allen v. Allen, 85 N. J. Eq. 55, Vice-Chancellor Leaming, basing his judgment on Crane v. Crane, supra, said that sup-

pression by a defendant husband at the time of the marriage, he being sane at the time, of the fact that he was afflicted with hereditary insanity, is no ground for annulment. He held that there was not sufficient evidence of the fact that defendant at the time of marriage was afflicted with a taint of insanity which would have been inherited by offspring. The court of errors and appeals affirmed (*86 N. J. Eq. 441*), but solely upon the ground that the evidence did not convince that court that defendant was in fact afflicted with hereditary insanity and the court said: "Reaching this conclusion, for the reasons stated, we find it unnecessary to consider the interesting question discussed by the learned vice-chancellor in his opinion, viz., whether the fact that one of the parties to a marriage is insane at the time when the marriage takes place, and intentionally conceals that fact from the other party to the marriage, affords just ground for its annulment." If the vice-chancellor meant to express an opinion that the existence of the condition indicated by the court of errors and appeals would not be sufficient ground for relief, I think he is opposed by the weight of authority. See note to *Ridgely* v. *Ridgely, 25 L. R. A. 800.*

The conduct of the defendant, in the case at bar, in concealing the fact that he was at the time of the marriage suffering from hereditary chronic tuberculosis was undoubtedly fraudulent. The question, then, is whether, under *Carris* v. *Carris,* to relieve against such fraud would be against good policy, sound morality and the peculiar nature of the marriage relation. I am convinced to the contrary. Vice-Chancellor Leaming, in *Allen* v. *Allen, supra,* said that the requirements, as stated by the court in *Carris* v. *Carris,* were not sufficiently inflexible or definite to be easily applied to a concrete case other than the one then before the court. It seems to me that such a false representation as we have in this case does not fall within that class referred to by Mr. Justice Bedle in *Carris* v. *Carris* as having regard to family, fortune or external condition; that the representations with respect to health which may be considered to fall within that class are representations with respect to general health. See *Bish. Mar., D. & S. §§ 459, 460.* Procreation, if not the sole, is at least an important reason for the existence of the marriage

relation. *Raymond* v. *Raymond, 79 Atl. Rep. 430; Rector* v. *Rector, 78 N. J. Eq. 386.* It is well known, aside now from the medical testimony in this case, that close contact with one suffering from tuberculosis involves great danger of transmission both through infection and contagion. It is almost impossible to conceive the ordinary relationship of husband and wife existing without that danger ever present. There is always also great danger of transmittal of the disease to offspring, and, as I have stated before, if the disease itself is not transmitted there are likely to be transmitted characteristics which predispose toward the development of the disease. False representations with respect to its existence go then, I think, to an essential of the marriage relation. They are very different from representations with respect to health in general. They are more akin to representations of freedom from leprosy or diseases of similar nature.

I cannot agree that the only diseases which effect an essential of the marriage relation are those of a venereal nature. I can see nothing whatever in good policy, sound morality or the peculiar nature of the marriage relation which would warrant the court, after having found the fraud, denying relief. Neither good morals nor public policy are subserved by compelling parties to live together as man and wife, with the ever present danger of infection, and beget offspring liable to be tuberculously inclined, nor are they subserved by compelling a woman who has married under a misrepresentation with respect to the fact, to continue to be bound to a man affected with tuberculosis, without having the close intimacy to which she is entitled. The only case that I have found in which the precise disease has been dealt with is *Sobol* v. *Sobol, 150 N. Y. Supp. 248,* in which case the supreme court of New York at special term (Mr. Justice Blanchard) held that a court of equity would annul a marriage where there was a suppression of the existence of tuberculosis in one party. It is true that in that case the court held, in effect, that the status of marriage had not been created, but I am unable to conclude that there is any essential difference, so far as the matter now under consideration is concerned, between tuberculosis and syphilis. *Sobol* v. *Sobol* was cited by Vice-Chancellor Leaming in *Allen* v. *Allen* without disapproval. The

vice-chancellor, after referring to *Sobol* v. *Sobol,* says that no satisfactory authority exists to support the view that a marriage contract, voidable only, can be annulled by a court of equity for fraudulent concealment by a party touching his or her physical condition except in the extreme instances already referred to of disease of either party of a nature to render contact seriously dangerous * * *. In *Sobol* v. *Sobol,* tuberculosis was held to be such a disease. In the instant case there are no children, so that the effect of the action of the court upon children is not involved. Where the question of morality and policy must be considered, as in this class of cases, then it seems to me to be clear that each case must stand upon its own facts, and no general rule can be laid down. I am unable to agree that the rule of *caveat emptor,* apparently referred to by Bishop, sections 459, 460, has any application to a case such as I am now dealing with. While due caution may require a party to a marriage contract to make his own investigation with respect to fortune, family and other external conditions, it seems to me to be going too far to say that due caution requires a party to a marriage contract to require the production of a medical certificate, and in the case at bar a medical examination would have been required to advise petitioner of the condition of defendant. Such a rule is not applied in the case of syphilis, nor do I think it should be in the case of tuberculosis. The suppression by defendant of the fact that he was suffering from tuberculosis of the nature that he was, for the reason that he did suppress it, is equivalent in law to an express representation on his part that he was free from it.

The exceptions will be sustained and a decree advised.