The only question in this case is whether or not if defendant were afflicted with epilepsy at and before the time of his marriage to petitioner, knew it and represented to her that he had it not or concealed the fact from her, it was such a fraud as would entitle her to a decree annulling the marriage under the general equity jurisdiction of this court. It has been held that tuberculosis is such a cause. Davis v. Davis, 90 N.J. Eq. 158.
Also syphilis. Crane v. Crane, 62 N.J. Eq. 21.
In Carris v. Carris, 24 N.J. Eq. 516, the court of errors and appeals held that the court of chancery, under its general power to annul fraudulent contracts, has jurisdiction to annul contracts of marriage for sufficient fraud. And Vice-Chancellor Stevenson, in Ysern v. Horter, 91 N.J. Eq. 189 (at p. 198), observed that what is sufficient fraud remains, he thought, the subject of ascertainment in every case brought before this court, in which the complaining spouse alleged his or her consent to the marriage, was induced by the defendant's fraud.
To warrant the court in granting a decree for fraud, the fraud imposed upon the petitioner must be of a character affecting an essential of the marriage relation. Crane v. Crane, supra;Bolmer v. Edsall, 90 N.J. Eq. 299. It seems *Page 3 
to me, upon reflection, that epilepsy falls within this doctrine as certainly as do syphilis and tuberculosis.
In the case at bar the proofs show that at the time of the marriage defendant was suffering from epilepsy; had been so suffering for a considerable period of time; had had an epileptic fit upon the public street two or three months prior to the marriage; represented to his prospective wife that he was in good health and had never been sick since he was a child and had had no occasion for a doctor; that within a very short time after the marriage he had an epileptic fit; had a second one, and his condition as an epileptic was then discovered by his wife, who straightaway left him; that she had no knowledge of his condition at or before the time of the marriage; that epilepsy is a chronic disease of the nervous system, attended by brain deterioration, which is progressive, is congenital, and likely to be transmitted by marriage and child-bearing, and is considered incurable.
In Gould v. Gould, 78 Conn. 242, it was held by the supreme court of errors in an action for divorce or a decree of nullity under the Connecticut statute, that one induced by fraudulent concealment to marry an epileptic, forbidden by that statute, is entitled to divorce on the ground of fraudulent contract, the court observing, inter alia: "That epilepsy is a disease of a peculiarly serious and revolting character, tending to weaken mental force and often descending from parent to child or entailing upon the offspring of the sufferer some other grave form of nervous malady, is a matter of common knowledge of which courts of law will take judicial notice. * * * One mode of guarding against the perpetuation of epilepsy obviously is to forbid sexual intercourse with those afflicted by it and to preclude such opportunities for sexual intercourse as marriage furnishes." And further on in the opinion, speaking of epileptics as a class of persons to whom their statute applied, the court said: "It is a class capable of endangering the health of families and adding greatly to the sum of human suffering."
In McGill v. McGill, 163 N.Y. Supp. 462, it was held: "While there is danger of infection in association with a *Page 4 
person afflicted with tuberculosis, which does not exist in the case of epilepsy, yet, so far as is apparent to the medical world at this time (1917), the danger of transmission of epilepsy to offspring is vastly greater than in the case of tuberculosis, and the chance of cure much less. This case (Sobol v. Sobol,150 N Y Supp. 248) is interesting as extending the rule for annulment of marriage in the case of fraudulent concealment or statements to other than venereal diseases. * * * It is undoubtedly true that the fact that one party to a marriage has, at the time, a venereal disease, is abhorrent to every sense of justice and decency. It means the unchastity of the defendant, the pollution of the innocent victim, and means indecency on the part of the wretch who precipitates such a wrong upon the innocent person, who, in the fullness of her affection, yields her person to his embraces; yet, when we consider the comparative consequences, it would seem to be somewhat of a refined distinction of equitable principles to grant an annulment in the case of a person suffering from a disease described in the case cited (Anonymous, 49 N.Y. Supp. 331) as one of a less virulent character than syphilis, and refuse it to a person chained to an epileptic. Both should be freed from an alliance that has no possibility of happiness and almost a certainty of misery, not only to the parents, but, in the case of epilepsy, to, at least, the second, and, probably, the third, generations."
In this case (McGill v. McGill) it was held that a marriage contract will be annulled, there being no living children, for the fraudulent concealment by the woman before marriage of the fact that she had epilepsy, which is shown by the evidence to be incurable, to result in mental weakness, and, possibly, dangerous insanity, and which would probably affect the descendants for generations. This judgment was reversed in the appellate division of the New York supreme court (S.C., 179 App. Div. 343), but only upon the ground that the finding by the court below that the plaintiff was induced to marry the defendant through deception, concealment and misrepresentation on defendant's part, was against the weight of the evidence, and, moreover, that it was conclusively *Page 5 
shown that plaintiff voluntarily cohabited with defendant as his wife with full knowledge of facts constituting the alleged fraud, and that precluded him from obtaining an annulment on that ground, which reversal was affirmed, without opinion, in the court of appeals. S.C., 226 N.Y. 673. Here was no overruling or modification of the supreme court's decision in163 N.Y. Supp. 462, that epilepsy is sufficient ground for anulling a marriage for fraud.
The reasoning of the Connecticut and New York cases is, I think, on principle, quite parallel to our doctrine of annulment for tuberculosis and syphilis, and quite apposite in the case at bar.
It is true that we make a distinction between consummated and unconsummated marriages in cases of nullity, c. See Ysern v.Horter, supra. But in Carris v. Carris, supra, there was consummation of the marriage, nevertheless it was annulled for fraud, the husband having left his wife as soon as the fraud was discovered. In Crane v. Crane, supra, the parties were married in July, 1893, and in May, 1894, the petitioner discovered that her husband was diseased and charged him with having syphilis, which he then acknowledged having had for fourteen years. Thereafter the wife ceased to have marital intercourse with him, but allowed him to remain in her house, in which they resided, and administered to his wants until his condition became so offensive that he was obliged to leave in October, 1896. So, here, there was consummation also. In Davis
v. Davis, supra, which was an annulment for tuberculosis discovered by petitioner after marriage, there had been consummation, and, in fact, birth of issue, which died. InDaniele v. Margulies, 95 N.J. Eq. 9, there was an annulment for lunacy and unsoundness of mind discovered after marriage, notwithstanding consummation and the birth of issue, it being held that non-consummation is not an absolute prerequisite to nullity of marriage for fraud in all cases. And, as we have seen, it has not been considered an impediment to a decree in our state in cases of antinuptial incontinence (Carris v. Carris), syphilis (Crane v. Crane) and tuberculosis (Davis v.Davis). And in the *Page 6 
Connecticut case of Gould v. Gould, and in the New York case of McGill v. McGill, consummation was present as in the case at bar.
The false representation in the case at bar consisted of defendant's statement that he was in good health and had never been sick since he was a child and had had no occasion for a doctor, when, in fact, he was, and for a considerable period of time had been, an epileptic. He suppressed the truth, even if he did not make an affirmative false representation as to the particular fact of epilepsy. And the fraud for which a marriage will be annulled may be either suggestio falsi or suppressioveri. Steerman v. Snow, 94 N.J. Eq. 9.
Being clearly of opinion that when a man who contracts marriage is, and has been, suffering from epilepsy (a chronic disease of the nervous system, attended by brain deterioration, which is progressive, is congenital and likely to be transmitted by marriage and child-bearing, and is considered incurable), represents to his prospective wife that he is in good health, had never been sick and had had no occasion for a doctor, and within a short time after the marriage had epileptic fits, and his wife then for the first time discovered the disease with which he was afflicted, and straightaway left him, having had no knowledge of his condition at or before the time of the nuptials, the wife is entitled to have the marriage annulled for fraud, notwithstanding consummation.
 Decree nisi accordingly. *Page 7