WALTER J. OZARK, Plaintiff, *v.* LILLIAN T. OZARK, Defendant.

Supreme Court, Equity Term, Onondaga County, November 20, 1947.

*Milton Macht* for plaintiff.

*Albert Orenstein* for defendant.

SEARL, J. The action is for annulment of a marriage entered into June 24, 1939. Plaintiff alleges he was induced to enter into the marriage because of fraudulent misrepresentation of the defendant that she was not suffering from tuberculosis.

Briefly, both parties had been employed at a local manufacturing plant some two years before the marriage. They became acquainted at a social event held in 1937. From that time on they were together frequently until the marriage. Meanwhile defendant's father had become ill with tuberculosis, was confined in the Onondaga Tuberculosis Sanatorium, to plaintiff's knowledge. In fact, plaintiff and defendant together visited defendant's father there. The father died of the disease late in 1938. Following his death, members of the family, including defendant, were given tuberculin tests at the Chest Clinic from time to time. The parties to this action discussed, before marriage, the results of these tests. Plaintiff admits the defendant exhibited to him the puncture wound of the needle on her arm, which showed no positive reaction.

After marriage, defendant continued her employment, lost no time because of illness, and contributed a substantial portion of her earnings to a joint bank account with her husband. In 1943, the wife consulted a physician relative to a throat condition. The physician recommended the taking of X-ray films. A tubercular condition of the right lung was revealed. The wife then became a patient at Biggs Memorial Hospital in August, 1943, and remained there, with the exception of brief periods, until March, 1945. Shortly thereafter she went to Onondaga Tuberculosis Sanatorium. She was discharged from there in July, 1946, but reconfined in March, 1947.

At the time of the trial of this action, defendant came from the sanatorium to testify. Her then attending physician, Dr. Bernard F. Brown, superintendent of the sanatorium, testified that the tubercular condition was then quiescent. At that

time defendant was awaiting an operation known as thoraco-plasty, in this case a complete collapse of the right lung. Dr. Brown testified that such an operation produced satisfactory results in all but 8% of the cases. He also stated if the patient survived the operation and was not among the 8% failing to respond, that in his opinion, after a period of rest and convalescence for a year or eighteen months, the defendant could enjoy normal health and life, engage in her usual work, and pursue a normal course of living as a married woman.

The plaintiff contends that the night in November, 1938, when he gave defendant her engagement ring, she stated her health was good, and three weeks before marriage, that the X-ray photographs taken at the Chest Clinic were satisfactory. Plaintiff seeks to establish his claim of fraud first, upon a claimed statement of defendant in the summer of 1943 to effect that she knew she had tuberculosis before marriage, but would not believe the doctors because " she felt so good "; secondly, upon a claim that a letter was mailed to defendant on December 7, 1938, from the Chest Clinic stating that defendant's sister had been given a report of certain X rays, and that defendant should come into the Chest Clinic. The proof of mailing the letter, properly addressed to defendant, was sketchy. However, the court, having received the letter in evidence, the presumption was raised that defendant received it. (*Hastings* v. *Brooklyn Life Ins. Co.*, 53 Hun 631, opinion in 6 N. Y. S. 374, 376.) Defendant testified positively that she did not receive this letter. She had been undergoing tests at the clinic from time to time. It would seem probable that had she received the letter, she would have at least called at the clinic. Even assuming that the X rays taken the previous July had shown a positive condition, there was nothing in the letter indicating this fact. It might fairly be argued that if received, defendant might conclude there was trouble. However, the burden here rests upon plaintiff to show fraud.

Turning now to the statements claimed to have been made by defendant, we are confronted with the mandate contained in section 1143 of the Civil Practice Act: " The declaration or confession of either party to the marriage is not alone sufficient as proof, but other satisfactory evidence of the facts must be produced."

Even though the court should accept as true the statements claimed to have been made by defendant, which are denied, there is no other satisfactory evidence convincing the court that defendant knew she had the disease either when she prom-

ised to marry plaintiff or when the marriage took place. These parties were apparently fond of each other. Even after three years of married life, and after the husband became aware of the condition, he sent letters to his wife evincing affection, even as late as Christmas, 1944. Then, in 1945, he personally served a summons and complaint upon his wife in the home where both were living. The marriage vow " in sickness and in health " cannot thus be deleted to mean " in health " only.

As each and every marriage must, as the night follows the day, be clouded with the uncertainty of health and even the continuance of life itself, so must each of the contracting parties bow to the inevitable and be steadfast. Clearly, one of the vital considerations of the agreement is that each is assured of the help, aid, and comfort of the other when sickness strikes. Neither the husband nor the wife need yet despair. The chances of complete recovery of the wife are greatly in her favor through modern surgery and technique.

As to the law applicable to the instant case, plaintiff cites *Sobol* v. *Sobol* (88 Misc. 277). There, a decree was granted. However, within a few days after the marriage, defendant's condition was diagnosed as tuberculosis, and the parties no longer cohabited. Testimony was given to the effect that defendant's condition was incurable. The court there differentiates between a marriage relationship of relatively short, compared to one of long, duration where a status of more or less permanency has been established affecting vitally not only the parties to each other, but the general public as well. In the instant case, long cohabitation of the plaintiff and defendant places the relationship in the latter category.

The same justice that wrote in the *Sobol* case has, in the next preceding case, *Bahrenburg* v. *Bahrenburg* (88 Misc. 272, affd. 172 App. Div. 950), commented on the court's decision in the oft-cited *di Lorenzo* case (174 N. Y. 467, 472) thus: " A reasonable interpretation of the *di Lorenzo* case, therefore, is that in order for the court to be authorized to grant an annulment of a marriage a plaintiff must show to the court not only that the misrepresentation complained of was as to a fact which was an essential element in the giving of his consent to the contract of marriage, but also that it was of such nature as to deceive a person of ordinary prudence." (See, also, *Jones* v. *Jones*, 189 Misc. 145.) The knowledge plaintiff had in the instant case, that there was a likelihood of defendant inheriting a predisposition toward tuberculosis, coupled with the fact that defendant was constantly undergoing medical tests, leads to a logical

conclusion that an ordinarily prudent person could not, in the face of the conceded facts, be readily made the object of fraud. Surely the husband could not intentionally disregard "probabilities or disabilities" (Grossman, N. Y. Law of Domestic Relations, § 721).

Judge CRANE wrote for the court in *Lapides* v. *Lapides* (254 N. Y. 73). Plaintiff sought an annulment on the grounds that defendant concealed the fact that she suffered from epileptic attacks before marriage. The court held that defendant's fraudulent concealment was without evidential support. "Mere non-disclosure", reads the opinion, "as to birth, social position, fortune, good health, and temperament cannot vitiate the marriage contract. * * * Sickness and misfortune are common to mankind and must be borne with courage and resignation. Most people have something to contend with." (See, also, *Feig* v. *Feig*, 232 App. Div. 172; *Anonymous* v. *Anonymous*, 69 Misc. 489; *Chambers* v. *Chambers*, 32 N. Y. S. 875; *Zoske* v. *Zoske*, 64 N. Y. S. 2d 819; *Johnson* v. *Johnson*, 189 Misc. 131; *Natoli* v. *Natoli*, 72 N. Y. S. 2d 708.)

In this case no counterclaim is interposed. So far as the evidence discloses, no maintenance was allowed to the wife until final results of the operation made it known that she would become a public charge. The Legislature passed (L. 1940, ch. 226) section 1140-a of the Civil Practice Act. The wording of the section is clear. There is no clause therein making support of the wife dependent upon granting judgment on a counterclaim. The provisions of the section "apply to any action brought by either the husband or the wife" for annulment, or to declare the nullity of a void marriage. The salutory effect of this section is apparent in this case. Were the court without power to grant the wife relief, the effect would be to encourage the wife to bring a subsequent action for separation, resulting in unnecessary litigation.

The wife has been granted temporary alimony of $20 a week. The evidence discloses that the husband's earnings have diminished somewhat since the allowance was made.

If both parties will co-operate, the home may be re-established.

Findings and decree may enter dismissing plaintiff's complaint. Provision may be made that the husband pay to the wife the weekly sum of $15 per week, together with the costs of this action.