(21 Misc. Rep. 765.)

ANONYMOUS.

(Supreme Court, Special Term, New York County. November, 1897.)

MARRIAGE—ANNULMENT FOR FRAUD.

Where a man represented to a woman that he was in good physical health, in reliance on which statement she married him, when, as a matter of fact, at the time, he knew he had a chronic and contagious venereal disease, which he communicated to his wife, whereupon, immediately after discovering his condition, she left him, and lived apart from him, there being no offspring of the marriage, she is entitled to a decree annulling the marriage on the ground of fraud.

Action by a mother to annul the marriage of her minor daughter on the ground of fraud. Report of referee recommending the annulment of the marriage. Decree of annulment granted on the report.

Before ROGER FOSTER, Referee.

B. Lewinson, for plaintiff.

Herman Joseph, for defendant.

FOSTER, R. This action was brought under sections 1743, 1750, Code Civ. Proc., by a mother, to annul for fraud the marriage of her minor daughter. The following facts were proved upon the trial before me, at which both parties were represented by counsel:

The marriage was solemnized on February 9, 1897. The wife was then 20 years of age. Before the ceremony, in a conversation be-

tween them during their engagement, the defendant told her that he was in good health. In reliance upon this statement she entered into the marriage relation. The representation was false and fraudulent, for he was then, as he well knew, afflicted with a chronic and contagious venereal disease. Within one week from their marriage his wife contracted the disease from him. She has suffered so acutely from it that her life was endangered, and she is not yet cured; nor is he, so far as the evidence discloses. Immediately after her discovery of his condition, she left him, and they have since lived apart. There is no offspring of the marriage, and she is not pregnant.

The case is almost of first impression, and the law upon the subject of the annulment of marriage for fraud is by no means clear. Its general principles, however, are well settled. Where there has been a consent, and the minds of the parties have met when they joined in the bond, the fact that either of them entered into it upon the faith of a misrepresentation so material as to avoid an ordinary contract is in most cases no ground for allowing him or her to be relieved upon a discovery of the fraud. "The contract of marriage is something more than a mere civil agreement between the parties, the existence of which affects only themselves. It is the basis of the family, and its dissolution, as well as its formation, is matter of public policy, in which the body of the community is deeply interested, and it is to be governed by other considerations than those which obtain with regard to any ordinary civil contract inter partes. For that reason the courts have been strict in laying down and in maintaining rules as to the annulment of this contract, and in requiring a somewhat higher degree of proof, before permitting it to be set aside for fraud, than is requisite for the annulment of ordinary contracts, and in insisting also that the fraud which shall invalidate the contract must be something more than a mere misrepresentation as to collateral matters. "Without examining fully into all the cases upon this subject, it may be sufficient to say that the rule is well settled that no fraud will avoid a marriage which does not go to the very essence of the contract, and which is not in its nature such a thing as either would prevent the party from entering into the marriage relation, or, having entered into it, would preclude performance of the duties which the law and custom imposes upon the husband or wife as a party to that contract. 1 Bish. Mar. & Div. §§ 183, 184; Schouler, Husb. & Wife, § 27; Reynolds v. Reynolds, 3 Allen, 605. Within that rule it has been held that fraudulent representations of one party as to birth, social position, fortune, good health, and temperament do not vitiate the contract (1 Schouler, Husb. & Wife, § 27); and so, also, it seems to be a well-established rule that no misconception of one party as to the character or fortune or temper of the other, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice. Bish. Mar. & Div., supra; Wier v. Still, 31 Iowa, 107. If, when the relation is entered into, the party is competent to make

that contract, is mentally competent to do the duties which the contract involves, and physically able to meet its obligations, nothing more can be required; and, however the other party may be disappointed as to physical or mental characteristics which he or she expected would exist, such disappointment is no ground for setting aside the contract, which the public good requires should be rendered indissoluble except for the gravest reasons. In the application of this rule the courts have properly proceeded to an extent which seems sometimes to work a hardship. Undoubtedly, it is gravely important to every respectable man that the woman whom he takes to wife should be virtuous; and yet it is thoroughly well settled that the mere fact that the woman, previous to her marriage, has, without the knowledge of her husband, been guilty of incontinence, affords no ground for setting aside the marriage contract, if she has reformed. Reynolds v. Reynolds, 3 Allen, 605; Leavitt v. Leavitt, 13 Mich. 452; 1 Bish. Mar. & Div., supra." Rumsey, J., in Fisk v. Fisk, 6 App. Div. 432, at pages 434, 435, 39 N. Y. Supp. 537.

The language of Judge Rapallo in Blank v. Blank, 107 N. Y. 91, 96, 13 N. E. 615, and the decision of the equity term of the superior court of the city of New York in Keyes v. Keyes, 6 Misc. Rep. 355, 26 N. Y. Supp. 910, would support a more liberal doctrine; but, in view of the express disapproval of King v. Brewer, 8 Misc. Rep. 587, 29 N. Y. Supp. 1114, and the limitations laid down in Fisk v. Fisk, supra, this case will be measured by the rule laid down in the opinion of Judge Rumsey, above quoted. The fraud which vitiates the marriage must be one which relates to the fundamentals of the relation; and one of those fundamentals is a physical capacity to discharge the marital duties, and for each sex to do its part towards the production of their offspring. The rule, however, is not restricted to a fraudulent concealment of physical impotency. For, in cases where the parties have had complete physical congress, marriages have been annulled because of the fraudulent concealment of the fact that at the time of their celebration the woman was pregnant by a man other than her husband. Scott v. Shufeldt, 5 Paige, 43; Reynolds v. Reynolds, 3 Allen, 605; Morris v. Morris, Wright, 630. The fraudulent concealment or denial of antenuptial incontinency by either party with others, or even of the previous birth of an illegitimate child by the woman, are not, however, adequate grounds for the annulment. The reason for the distinction is clearly stated by Judge Pryor, in Shrady v. Logan, 17 Misc. Rep. 329, 330, 40 N. Y. Supp. 1010:

"Pregnancy with an illegitimate child at the time of the marriage avoids it, for the reason, as stated by the courts and writers, that it disables the wife for the present discharge of her proper functions, namely, giving offspring to her husband, and because it brings a bastard to his bed to compete for his fortune with his lawful issue."

The duties imposed by the marital relation are reciprocal, and each has an equal right to the performance of those imposed upon the other. The wife, as well as the husband, has the right to offspring, and a fraud which conceals his disability to discharge his

proper functions towards that end should entitle her to release. Where either party is in such a physical condition that the discharge of the marital function will afflict the other with a loathsome disease, he or she is, in my opinion, not "physically able" to meet the marital obligations. The report of the referee in Meyer v. Meyer, 49 How. Prac. 311, upon which, however, no action seems to have been taken by the court, and where the fraudulently concealed disease affected the woman, confirms this position. In Devanbagh v. Devanbagh, 6 Paige, 175, 177, where Chancellor Walworth held that curable impotency was not a ground for annulment, although the woman refused to submit to the operation necessary for the cure, fraud was expressly disproved. In the unreported case of G——— v. G———, on July 8, 1897, which was called to my attention after the foregoing opinion was written, a judgment was entered at the direction of Mr. Justice Truax, dissolving a marriage for fraud in the suppression by the defendant of the fact that he was afflicted at the time of marriage with syphilis, which he gave to his wife, and which was transmitted to a child born of the marriage, who afterwards died. One of the findings was as follows:

"The representations made by the defendant to the plaintiff, and to her friends and relatives on her behalf, as to his physical condition and freedom from constitutional and organic disease, constitute a fraud on plaintiff, and entitle her to have the marriage aforesaid, contracted between herself and the defendant in reliance upon such misrepresentation, absolutely annulled and dissolved."

Although the disease fraudulently concealed in the case at bar was of a less virulent character, and one that, perhaps, would be more correctly described as local rather than as constitutional, the principle seems to be the same; and this decision would be binding upon me even if it were in conflict with my own views. The issues are, consequently, decided in favor of the plaintiff, and a report herewith submitted recommending the annulment of the marriage.

Ordered accordingly.