MARGUERITE SVENSON, Appellant, *v.* OSCAR H. SVENSON, Respondent.

1. MARRIAGE — WHEN ANNULLED FOR FRAUD IN CONCEALING THE EXISTENCE OF DISEASE AT THE TIME OF THE MARRIAGE. Equity will annul a marriage upon the ground of fraud, where one of the parties at the time of its celebration, is afflicted with a chronic, contagious and hereditary venereal disease, which fact was known to and concealed by him, even assuming that at the time of the application for its annulment he had practically recovered; especially in a case where the marriage has not been consummated, and, therefore, the marriage relation has not fully ripened into the complications of a public *status*, involving the consideration of questions of public policy.

2. APPEAL — APPELLATE DIVISION HAS NO AUTHORITY TO AFFIRM AN INVALID JUDGMENT UPON A NEW ISSUE. A judgment of the Appellate Division affirming an incorrect and unwarranted judgment dismissing the complaint in an action for the annulment of such a marriage, upon the sole ground of some supposed collusion between the parties, where no such issue was raised on the trial or decided by the trial judge, is beyond the power of that court and requires the reversal of the judgments.

*Svenson* v. *Svenson*, 78 App. Div. 536, reversed.

(Argued February 23, 1904; decided March 15, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 9, 1903, affirming a judgment in favor of defendant

entered upon a dismissal of the complaint by the court on trial at Special Term.

The action was brought to procure an annulment of the marriage between the plaintiff and defendant upon the ground of fraud, in that the defendant, at the time of the marriage, was suffering from a chronic and contagious venereal disease which he concealed from the plaintiff.

The parties were married in the city of New York March 29, 1900. The plaintiff was induced to consent to such marriage through representations made by the defendant that he was at the time in good health and physically able to consummate and discharge the marital functions, and she believed such representations and relied thereon. At the time of the marriage and long prior thereto, the defendant was suffering from a chronic and contagious venereal disease and knew such fact. He concealed from the plaintiff his real character and physical condition prior to such marriage and she had no knowledge thereof. After the marriage he stated to her that it would be impossible for him to cohabit with her as man and wife by reason of such disease. At the time of the trial he had practically recovered. The plaintiff and defendant never cohabited as man and wife and such marriage has never been consummated. As soon as she ascertained the falsity of such representations and the defendant's true character and physical condition, she immediately left him and did not afterwards cohabit with him. The foregoing are the facts as found by the trial court. As conclusions of law it held that the marriage was not obtained by such fraud as called for an annulment, or as would justify such relief, the defendant having since recovered, and it thereupon dismissed the complaint upon the merits. Upon appeal to the Appellate Division, that court in effect held that the trial court erred in deciding that the plaintiff could not recover upon the ground stated, but affirmed the judgment upon the theory that there was collusion between the parties upon the trial of the action, and for that reason alone the judgment was affirmed.

*J. Stewart Ross* for appellant. The marriage not having been consummated, plaintiff was in a position to urge the annulment thereof. (*Di Lorenzo* v. *Di Lorenzo*, 71 App. Div. 509.) The defendant was not physically able to meet the obligations which he assumed in entering the marriage state, and in representing to the plaintiff that he was in a state of good health and able to consummate the marriage, he practiced such a fraud upon the plaintiff as to entitle her to the relief demanded. (*Anonymous*, 21 Misc. Rep. 765; *Di Lorenzo* v. *Di Lorenzo*, 174 N. Y. 467.) The Appellate Division having found that on the facts as found by the trial court the judgment should be reversed, had no power or right to find any fact charging collusion between the parties. (*Matter of Fitzsimmons*, 174 N. Y. 15.)

No appearance for respondent.

MARTIN, J. We share in the unwillingness of the learned Appellate Division to indorse the decision of the Special Term or the ground upon which it was based, or to assert the doctrine that an innocent and unsuspecting girl who marries a man afflicted with a chronic, contagious and hereditary venereal disease, and who, therefore, refuses to consummate the marriage, may not procure a decree annulling the same because of the fraud involved in the existence of such a condition and its concealment from her.

The statute of this state relating to marriages and the annulment thereof, among other things, provides : " When either of the parties to a marriage shall be incapable, for want of age or understanding, of consenting to a marriage, or shall be incapable from physical causes, of entering into the marriage state, or when the consent of either party shall have been obtained by force or fraud, the marriage shall be void, from the time its nullity shall be declared by a court of competent authority." (2 R. S. pt. 2, ch. 8, tit. 1, § 4.)

The findings of fact in this case were in the plaintiff's favor and substantially included all the allegations of the complaint.

But the relief sought was denied upon the ground that the defendant, two years after the marriage, had practically recovered. What a practical recovery from such a disease may import, where it has existed for more than two years, with the danger of its return and ultimate transmission, it is difficult, if not impossible, to determine. But it is certain at least that at the time of the marriage the defendant was incapable of meeting the obligations and performing the functions of the marital relation, and was morally and physically unfit to become or continue to be the husband of a pure and innocent girl. When he concealed that condition from her and still induced her to marry him in ignorance thereof, he was guilty of a base and unmitigated fraud as to a matter essential to the relation into which they contracted to enter. Obviously the principle that refuses relief in cases of ordinary ill-health after the marriage contract has been actually consummated has no application to a case like this, where there has been no consummation and the disease is one involving disgrace in its contraction and presence, contagion in marital association, and includes danger of transmission and heredity that even science cannot fathom or certainly define. The suppression of the presence of a disease including such dire and disastrous possibilities, directly affecting the marital relation, constitutes a fraud which clearly entitles the innocent party to a decree annulling the marriage contract, particularly when it has not been consummated.

"Marriage begins by contract and results in a *status*. If, before children are begotten, before debts are created, real estate involved, and the community have long recognized the relation, the injured party seeks relief from fraud, error or duress, it seems clear that no consideration of public policy will prevent a court from annulling a marriage where the relation has not fully ripened into the complications of a public *status*. In such case the marriage is but little more than a contract; and, in view of the serious consequences to follow, the degree of fraud which vitiates a contract should be sufficient." (Nelson on Marriage and Divorce, § 600.) "Where

there has been no consummation, any fraud which would be sufficient to annul a contract should in reason be sufficient to annul a marriage ceremony. No satisfactory reason of the law will justify the courts in declaring valid such a contract marriage when tainted with fraud or duress where the only effect will be the punishment of the innocent and the confiscation of his or her property by the deception. If the marriage is declared valid it will exist in name only, preventing both parties from marrying again and bringing the marriage relation into disrepute. Every reason for relief from fraud is applicable here, where a denial of relief is fraught with evil consequences much greater than those flowing from ordinary conduct." (Id. 602.) "Whatever of fraud, of error, or duress will vitiate any other contract, should ordinarily be received as sufficient to vitiate the mere marriage contract, whether executory or executed, viewed as a thing separate from the consummation which follows." (1 Bishop on Marriage and Divorce, § 166 *et seq.*)

This principle was very clearly and concisely stated by WOODWARD, J., in *di Lorenzo* v. *di Lorenzo* (71 App. Div. 509, 519) as follows : "When, however, the fraud is discovered before the marriage is consummated, and the innocent party refuses to cohabit, the marriage is so inchoate and incomplete that the *status* of the parties is similar to that of parties to an executory contract, and may be annulled without violating any considerations of public policy."

This court, in *Kujek* v. *Goldman* (150 N. Y. 176, 179), in discussing the question of the marital relation, made this remark : "It is difficult to see why a fraud, which, if practiced with reference to a contract relating to property merely, would support an action, should not be given the same effect when it involves a contract affecting not only property rights, but also the most sacred relation of life." This principle seems quite applicable where the marriage rests in contract alone, and has not ripened into "the complications of a public *status*." Again, in *di Lorenzo* v. *di Lorenzo* (174 N. Y. 467, 472), which was an action to annul a marriage contract

upon the ground of fraud, it was said : "The free and full consent, which is of the essence of all ordinary contracts, is expressly made by the statute necessary to the validity of the marriage contract. The minds of the parties must meet in one intention. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement. It is obvious that no one would obligate himself by a contract if he knew that a material representation, entering into the reason for his consent, was untrue. There is no valid reason for excepting the marriage contract from the general rule. In this case the representation of the defendant was as to a fact, except for the truth of which the necessary consent of the plaintiff would not have been obtained to the marriage. * * * The minds of the parties did not meet upon a common basis of operation. The artifice was such as to deceive a reasonably prudent person and to appeal to his sense of honor and of duty. The plaintiff had a right to rely upon the defendant's statement of a fact, the truth of which was known to her and unknown to him, and he was under no obligation to verify a statement, to the truth of which she had pledged herself. It was a gross fraud, and, upon reason, as upon authority, I think it afforded a sufficient ground for a decree annulling the marriage." In that case the representation was that the defendant had been delivered of a child of which the plaintiff was the father. While it may well be said that the cases to which we have previously referred are not precisely analogous to the case at bar, yet the principles laid down by the text writers and in those cases establish a general doctrine more or less applicable to the case under consideration.

There is, however, another line of cases more closely resembling the case at bar, which will now be considered. *Smith* v. *Smith* (171 Mass. 404, 408) was an action to procure a sentence of nullity of marriage. In that case it was held that it was within the power of the Superior Court to enter a decree declaring a marriage void where it appeared

that the libelant, after the ceremony and before the consummation of the marriage, on learning that the respondent was afflicted with a venereal disease, refused to live with him. The court in discussing that case said : " The case at bar rests solely upon fraud in regard to the bodily condition of the libelee. As we have already seen, the previous unchastity of the libelee is not enough to entitle the libelant to relief. Indeed, we are not quite certain from the report that the libelee might not have been constitutionally affected with the disease from his birth. But, on the findings of the judge, his concealed disease was such as would leave with him no foundation on which the marriage relation could properly rest. It had advanced to such a stage as probably to be incurable. The libelant could not live with him as his wife without making herself a victim for life, and giving to her offspring, if she had any, an inheritance of disease and suffering. While this case lacks the element of introducing a bastard child into the husband's family, which existed in *Reynolds* v. *Reynolds* (3 Allen, 605), it has the element of a loathsome incurable contagious disease to be communicated to the wife, which the other had not. Few if any would be bold enough to say that it was the duty of the libelant, on discovery of the fraud before the consummation of the marriage, to give herself up as a sacrifice, and to become a party to the transmission of such a disease to her posterity." This case was followed by the case of *Vondal* v. *Vondal* (175 Mass. 383), where it was held that the concealed existence of a venereal disease in one of the parties to a marriage which has been consummated is not a sufficient ground for the annulment of the marriage, but that case turned upon the fact of a presumed consummation of the marriage by cohabitation within four months after its celebration.

In an anonymous case (21 Misc. Rep. 765) the facts were in all essential respects identical with the facts in this case, and it was held by the referee before whom it was tried that the marriage should be annulled upon the ground that the presence of such a disease was a fraud upon the plaintiff;

that the contract having been made in reliance upon the representation of the defendant that he was in good health, an annulment of the marriage was recommended. In that action the learned referee refers to an unreported case, decided in July, 1897, by Mr. Justice Truax, wherein a marriage was dissolved for fraud in the suppression by the defendant of the fact that he was affected at the time of the marriage with syphilis which he gave to his wife and which was transmitted to a child born of the marriage who afterwards died. In *Meyer* v. *Meyer* (49 How. Pr. 311) a similar doctrine was held. *Ryder* v. *Ryder* (66 Vt. 158) is to the effect that if the wife, at the time of contracting the marriage relation, conceals from her husband the fact that she has chronic and incurable syphilis, it would amount to a fraud for which the marriage may be annulled under the statute which provides, " the marriage contract may be annulled when, at the time of the marriage, either party * * * was * * * physically incapable of entering into the marriage state, or when the consent of either party was obtained by force or fraud." Without further discussion of this question, we are clearly of the opinion that the plaintiff was entitled to the relief sought in this action, and this conclusion is justified by the principle of these authorities. [It is evident that the marriage not having been consummated, the usual considerations of public policy which apply to a case where the relation has by consummation of the marriage ripened into a public *status* do not exist here. ] There was between these parties little more than a contract to marry, and we are aware of no principle of public policy which would be subverted by annulling this marriage, or which requires us to compel the plaintiff to consummate the marriage and give herself up as a sacrifice to the possibilities involved in such a course.

As we have already seen, the learned Appellate Division entertained the same opinion as that reached by this court upon the merits of this action, but affirmed the judgment on the ground of some supposed collusion between the parties. No such issue was raised on the trial or decided by the trial

court. Presumably that conclusion was reached principally from the fact that the defendant appeared by an attorney, who, on the trial, waived the provisions of section 834 of the Code of Civil Procedure in the manner required by section 836 of that act, thus enabling the plaintiff to prove by a physician the physical condition of the defendant when the marriage contract was entered into, which she could not have done in that manner except by such waiver. If there remained in the defendant a single spark of manhood, how could he have done otherwise? Moreover, the record tends to disclose that this course was pursued by the defendant to avoid being called as a witness and compelled to testify to his own ignominy and disgrace. It may be that upon the record the learned Appellate Division, by virtue of its right to examine into the facts, possessed authority to award a new trial upon the ground that the plaintiff was entitled to a decree annulling her marriage, but it had not the power to affirm an incorrect and unwarranted judgment upon some other supposed ground, not tried or established at the trial, and thus defeat the plaintiff' and conclusively deprive her of a judgment upon the merits, to which she was entitled. In *Matter of Fitzsimons* (174 N. Y. 15, 25), when the case reached the Appellate Division, the question upon which the motion was decided by the court below was ignored, and the court held, as a matter of law, that the agreement was unconscionable, and in that case on appeal to this court it was said : " Under the circumstances it seems impossible that the learned Appellate Division had any jurisdiction to review that question when there was no issue raising it or trial presenting the facts relating thereto. Surely the appellant could not properly be thrown out of court and have his petition dismissed and all relief denied, without an opportunity to be heard upon the question. * * * When that question has been passed upon by the trial court it may be properly presented to the learned Appellate Division for review, but until it is so presented that court has no right to determine the question. 'It is one of the fundamental principles of our law that questions of fact

are to be tried and determined in a court of original jurisdiction, and it is not the appropriate function of an appellate court to determine controverted questions of fact and render final judgment . upon such determination.'" (*Benedict* v. *Arnoux*, 154 N. Y. 715, 724.)

Applying the principle of these authorities to the question under consideration, it becomes obvious that the Appellate Division exceeded its authority as a court of review by raising and deciding a new issue and thereupon affirming a judgment which was otherwise invalid and should have been reversed.

The judgments of the Special Term and the Appellate Division should be reversed and a new trial ordered, costs to await the final award herein.

PARKER, Ch. J., O'BRIEN, BARTLETT, VANN and WERNER, JJ., concur; GRAY, J., absent.

Judgments reversed, etc.