WILLIAM H. GRIFFIN, Plaintiff, *v.* GRACE H. GRIFFIN, Defendant.

Supreme Court, Kings Special Term, April, 1924.

**Husband and wife — annulment of marriage — action based on alleged fraudulent representation by wife before marriage that she loved plaintiff and alleged fraudulent promises to love and honor him — parties have been married seventeen years and have two children — after consummation marriage will not be annulled for fraud which does not go to essentials of relationship — complaint dismissed.**

After the consummation of a marriage and the resulting development of the relationship into a public status annulment will not be granted, on the ground of fraud committed prior to the marriage, unless the fraud charged goes to the essentials of the contract.

Accordingly, the complaint in an action by a husband to annul his marriage should be dismissed on the ground that it does not state facts sufficient to constitute a cause of action, where it is alleged as a basis for the annulment that the defendant fraudulently represented to plaintiff prior to their marriage that she loved and honored him and fraudulently so promised at the time of the marriage; that the parties lived together in marital relationship for seventeen years and two children were born to them, who at the time the action was commenced were respectively fifteen and six years of age, and that the plaintiff is the owner of property in which his wife has a dower interest, for while the fraud charged if proven might have been sufficient to annul a marriage that had not been consummated it was not a fraud concerning the essentials of the marriage relation.

MOTION to dismiss complaint.

*William J. Cullen*, for plaintiff.

*Battle, Vandiver & Van Tine*, for defendant.

LAZANSKY, J. Motion for judgment dismissing the complaint on the ground that it does not state facts sufficient to constitute a cause of action. Plaintiff sues his wife for an annulment of the marriage. The parties were married in 1906. There are two children, now aged fifteen and six. An analysis of a rather verbose complaint indicates the cause of action the plaintiff seeks to state

to be that prior to and at the time of the marriage defendant represented to plaintiff that she loved and honored him and would love, honor and serve him after marriage; that as a matter of fact she did not prior to, at the time of the marriage or thereafter, love and honor him; that at the time she married plaintiff she did so with an intent not to perform the duties of the marital relationship imposed by law and custom. As to the promise to love and serve after marriage, there is no allegation of an intent not to keep the promise at the time it was made. As to the allegation of intent not to perform the duties of the marital relationship, the complaint clearly shows that they have been performed, although not to the satisfaction of the plaintiff. \ The faults and omissions of defendant, as charged, might be a ground for a separation. To predicate upon them an intent not to perform the marital relationship and to annul the marriage therefor, would be an easy method of substituting annulment for separation. | The only basis for a cause of action for annulment are the allegations that defendant represented to plaintiff prior to and at the time of marriage that she loved and honored him when, as a matter of fact, she did not; that plaintiff relied upon the representation and would not have married her if he had known that it was not true; that as a matter of fact she did not honor and love him and has not honored or loved him since; that he has not cohabited with her since he has discovered the fraud. When the fraud was finally discovered does not appear. The last cohabitation took place in November, 1916. To consider the various cases prior to *Di Lorenzo* v. *Di Lorenzo*, 174 N. Y. 467, which have any bearing upon the question here involved, would serve no useful purpose except in connection with the general impression that existed, that the fraud which would justify a court in annulling a marriage had to do with the *essentialia* of the marriage relationship. For a discussion of cases before and after *Di Lorenzo* v. *Di Lorenzo, supra,* see editorial, New York Law Journal, August 22 and 23, 1923. In *Fisk* v. *Fisk*, 6 App. Div. 432; approved in *Di Lorenzo* v. *Di Lorenzo*, 71 App. Div. 509; revd., 174 N. Y. 467, the court (at p. 434) say: " Without examining fully into all the cases upon this subject, it may be sufficient to say that the rule is well settled that no fraud will avoid a marriage which does not go to the very essence of the contract, and which is not in its nature such a thing as either would prevent the party from entering into the marriage relation, or, having entered into it, would preclude performance of the duties which the law and custom impose upon the husband or wife as a party to that contract. * * * Within that rule it has been held that fraudulent representations of one party as to birth, social position, fortune, good health and tempera-

ment do not vitiate the contract  *  *  *  ; and so also, it seems to be a well-established rule that no misconception of one party as to the character or fortune or temper of the other, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice.  *  *  *  If, when the relation is entered into, the party is competent to make that contract, is mentally competent to do the duties which the contract involves, and physically able to meet its obligations, nothing more can be required; and however the other party may be disappointed as to physical or mental characteristics which he or she expected would exist, such disappointment is no ground for setting aside the contract, which the public good requires should be rendered indissoluble except for the gravest reasons."

This limited rule came to an end and seemed to be broadened to an extent to which many never thought it would be, by the decision of the Court of Appeals in *Di Lorenzo* v. *Di Lorenzo*, 174 N. Y. 467. There defendant represented to plaintiff that she had given birth to a child by him. He, believing these representations, and to legitimatize the child, was induced to marry the defendant, which he would not otherwise have done. The defendant's representations were false. She had not given birth to any child, but had produced the child of another to the plaintiff for the purpose of inducing him to marry her. After the marriage the parties lived together for about eight years. Thereafter the plaintiff discovered the fraud. There was no issue of the marriage. The Court of Appeals held the plaintiff was entitled to an annulment of the marriage and laid down this general rule, which has since been frequently cited: " While, then, it is true that marriage contracts are based upon considerations peculiar to themselves and that public policy is concerned with the regulation of the family relation, nevertheless, our law considers marriage in no other light than as a civil contract. (*Kujek* v. *Goldman*, 150 N. Y. 176.) The free and full consent, which is of the essence of all ordinary contracts, is expressly made by the statute necessary to the validity of the marriage contract. The minds of the parties must meet in one intention. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement. It is obvious that no one would obligate himself by a contract, if he knew that a material representation, entering into the reason for his consent, was untrue. There is no valid reason for excepting the marriage contract from the general rule."

In the same case it is also said: " If the plaintiff proves to the satisfaction of the court that, through misrepresentation of some fact, which was an essential element in the giving of his consent to the contract of marriage and which was of such a nature as to deceive an ordinarily prudent person, he has been victimized, the court is empowered to annul the marriage."

While some marriages may have been contracted without considerations of love and affection, it may be a decidedly material consideration upon which the parties enter into the bonds of wedlock. So here this plaintiff, as an ordinarily prudent person, may have deemed it a material factor and might not have entered into the relationship if he knew that his wife did not love him. He might not have been willing to have chanced his future happiness upon the possibility of developing what he deemed essential from the outset. Following the rule in the *Di Lorenzo* case, in my opinion, a misrepresentation such as the one here alleged may be a misrepresentation as to a material fact. In *Domschke* v. *Domschke*, 138 App. Div. 454, by quotation from Parsons on Contracts, the rule is tersely stated as follows: " ' if the fraud be such that, had it not been practiced, the contract would not have been made, or the transaction completed, then it is material to it; but if it be shown or made probable that the same thing would have been done by the parties, in the same way, if the fraud had not been practiced, it cannot be deemed material.' "

As bearing upon the materiality of love in connection with the marital relationship, the following is taken from the concurring opinion of Thomas, J., in the case last cited, where he speaks of the " destruction of the sacred love and respect that justify marriage." Assuming that the complaint contains allegations upon which may be predicated a claim of fraudulent representations which induced the marriage, there is, however, in my opinion, an insurmountable objection to the granting of the relief here sought. The parties have been married seventeen years. There are two children. Property rights are involved. In the *Di Lorenzo* case the Court of Appeals made no reference in this connection to the effect of consummation, birth of children and property rights. Less than a year after the decision in the *Di Lorenzo* case, the Court of Appeals decided the case of *Svenson* v. *Svenson*, 178 N. Y. 54. There, the defendant, at the time of the marriage, was afflicted with a chronic venereal disease, known to and concealed by him. It was held that plaintiff was entitled to an annulment of the marriage. After the marriage defendant advised plaintiff of his condition. Plaintiff and defendant never cohabited. The marriage was never consummated. The following is stated by the court, quoting from

Nelson on Divorce and Separation (Vol. 2, §§ 600, 602): "'Marriage begins by contract and results in a *status*. If, before children are begotten, before debts are created, real estate involved, and the community have long recognized the relation, the injured party seeks relief from fraud, error or duress, it seems clear that no consideration of public policy will prevent a court from annulling a marriage where the relation has not fully ripened into the complications of a public *status*. In such case the marriage is but little more than a contract; and, in view of the serious consequences to follow, the degree of fraud which vitiates a contract should be sufficient.' * * * 'Where there has been no consummation, any fraud which would be sufficient to annul a contract should in reason be sufficient to annul a marriage ceremony. No satisfactory reason of the law will justify the courts in declaring valid such a contract of marriage when tainted with fraud or duress, where the only effect will be the punishment of the innocent and the confiscation of his or her property by the deception. If the marriage is declared valid it will exist in name only, preventing both parties from marrying again and bringing the marriage relation into disrepute. Every reason for relief from fraud is applicable here, where a denial of relief is fraught with evil consequences much greater than those flowing from ordinary contracts.'" And from 1 Bishop on Marriage and Divorce (5th ed. p. 142, § 166 *et seq.*): "'Whatever of fraud, of error, or duress will vitiate any other contract, should ordinarily be received as sufficient to vitiate the mere marriage contract, whether executory or executed, viewed as a thing separate from the consummation which follows.'" The court also refers to what is stated in *Di Lorenzo* v. *Di Lorenzo* (71 App. Div. 509, 519): "'When, however, the fraud is discovered before the marriage is consummated, and the innocent party refuses to cohabit, the marriage is so inchoate and incomplete that the *status* of the parties is similar to that of parties to an executory contract, and may be annulled without violating any considerations of public policy.'"

The court, in the *Svenson* case, also quotes from the *Di Lorenzo* case in the Court of Appeals, but only on the question of fraud. It is interesting to note that the court made no observation in the *Svenson* case upon the fact that in the *Di Lorenzo* case the parties had lived together for eight years after the marriage, and yet makes reference to the statement in the opinion in the *Di Lorenzo* case in the Appellate Division limiting the fraud to cases where there has been no consummation. No case in the Court of Appeals touching upon this phase of the subject since the *Di Lorenzo* case has been submitted, nor has any such been found. In *Domschke* v. *Domschke*, *supra*, the defendant had represented to plaintiff that she had been

the wife of a man then deceased, who was the father of her child. As a fact, she had been that man's mistress and the child was a bastard. The parties cohabited for six years after marriage. There was no issue. It was held that although such misrepresentation did not go to the *essentialia* of the marriage contract it may be an essential qualification. It was also stated that in the *Di Lorenzo* case the misrepresentation did not go to the essence of the relationship. It was stated by Mr. Justice, later Presiding Justice, Jenks: " I cannot perceive that the question is affected by the circumstance that the marriage was consummated, for the sole relation of the false representation, as viewed by the law, is to the consent to contract of marriage, and the sole limitation to the action, as pointed out in *Di Lorenzo's Case* (*supra*) is voluntary cohabitation subsequent to the full knowledge of the facts. This court must decide this question upon the law as declared by our statute and as expounded by our highest court,"

This was written six years after the opinion in the *Svenson* case. In *Watkins* v. *Watkins*, 197 App. Div. 489, where the marriage was annulled upon the ground that the consent of plaintiff was obtained upon condition that after the civil ceremony there should be a ceremony according to Jewish rites, when the defendant refused to have the religious ceremony performed the parties separated without consummating the marriage by cohabitation, the following appears: " Where the marriage has not been consummated, it has been held that it ' is so inchoate and incomplete that the *status* of the parties is similar to that of parties to an executory contract, and may be annulled without violating any considerations of public policy.' (*Di Lorenzo* v. *Di Lorenzo, supra,* 71 App. Div. 509, 519, cited with approval in *Svenson* v. *Svenson, supra.*) "

In this case the court makes reference to the *Di Lorenzo* case in the Court of Appeals, but only upon the question of fraud. In *O'Connell* v. *O'Connell*, 201 App. Div. 338, the defendant had represented that he was of good personal habits and did not use drugs; that plaintiff, relying upon that, married him. As a matter of fact, he was not of good habits and was an addict of narcotics. It was held that the plaintiff was entitled to an annulment. The parties lived and cohabited together as husband and wife for a little less than a year. One child was born and at the time of the trial was two years of age. The court does not consider the question of effect of consummation, but it is stated as a basis for the court's action in granting annulment, " It would be a cruel injustice to compel the plaintiff to go through life bound by ties of marriage to a dope fiend past all hope of redemption, where it so clearly appears that she was induced to contract such alliance by fraud

and deceit." *Jacobson* v. *Jacobson*, 207 App. Div. 238, involved the concealment of a venereal disease. The condition was disclosed to the plaintiff several years after the marriage. The court did not consider the effect of the consummation. I have been unable to discover any definite settled rule as to the effect of a full and complete consummation of the marriage, the birth of children and the existence of property rights. In a case such as this, where the fraud does not go to what was denominated as the *essentialia* of the marriage relationship, for the want of a clear and express statement of the subject I shall follow in this case the statements quoted above in *Svenson* v. *Svenson*, 178 N. Y. 54. These parties have been husband and wife for seventeen years, have lived together for nearly all that time. There are two children, one of them soon to develop into young womanhood. Plaintiff is the owner of property in which his wife has a dower interest. They, of course, have been completely and effectually recognized as husband and wife. The state has an interest in the status of these parties. It is a fact that the statute would nominally save these children from the charge and disgrace of illegitimacy, but it is of vital importance to them and to the state that they should continue their lives without practically being deprived of the honor of parental name. If, as a matter of law, a decree could be granted under the facts set forth in this complaint, then no longer is marriage a sacred institution. Until final authority speaks further on the subject I shall adopt the following rule: Before consummation and the ripening into a status any fraud, had it not been perpetrated, the marriage would not have taken place, is material to it and the marriage may be annulled. After consummation and development of the relationship into a public status, the fraud is not material unless it goes to the *essentialia* of the contract. The acts, conditions or situations which may be included within the term *essentialia* of the marital relationship are not readily stated. Many have been so included, others may be. Its scope may be broadened by some courts. It will suffice here to say that plaintiff's claim does not. Motion granted.

Ordered accordingly.