

647

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

*(See R-2896 C52
Withdrawn)*

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

*see original file of
0-4751 for copy of
McKinley
opinion*

Dear Sir:

Opinion No. 0-4751
Re: Estate of Grace Adey -
Inheritance tax upon uncertain
future interests.

Your letter requesting our opinion on the above
subject reads as follows:

"Grace Adey, died a resident of Harris Coun-
ty, Texas, on June 16, 1941, testate, seized and
possessed of an estate having a net value of
$39,875.98. An examination of the will of the
deceased reveals that all of this estate has been
placed in a trust which provides for a life es-
tate to the two sisters of the deceased, and the
remainder to the nephew.

"In the event the nephew predeceases the
two sisters, the remainder passes to the DePelchin
Faith Home in Houston, a charitable institution
in Houston, Texas, and exempt from an inheritance
tax under our laws. The First National Bank in
Houston is named Independent Executor of the will
and Testamentary Trustee of the estate. The in-
heritance tax report for this estate has been
filed with this department and examined. We have
distributed the estate for inheritance tax pur-
poses as follows:

"A life estate to the two sisters of the de-
ceased and the remainder to the nephew. The life
estate of the two sisters has a value of $11,819.42,
We subtracted this value from the net estate, which
leaves a remainder of $28,056.56 to the nephew.
The sisters have a $10,000 exemption each, which
would exclude them from paying an inheritance tax,
however, the nephew has only a $10,000 exemption
and we levied a tax against his remainder interest
for the sum of $572.26.

"Mr. Edward S. Boyles, of Houston, who represents the First National Bank, has written the bank an opinion in which he holds that this remainder interest is not taxable/for the reason that it can not be determined at this time whether or not the nephew will ever benefit in the remainder of the estate, as his death, before the death of either of the two sisters, would ultimately place the corpus of this Trust Estate in the hands of the DePelchin Faith Home.

"You will find attached hereto the opinion of Mr. Boyles and the copy of the last will and testament of the deceased, for your use in advising this department whether or not we have distributed the estate in a correct manner for inheritance tax purposes."

## THE PROBLEM OF INHERITANCE TAXES UPON UNCERTAIN FUTURE INTERESTS

The precise question presented by your letter has never been passed upon by an appellate court in Texas. The problem of assessing inheritance taxes upon uncertain future interests, has, however, frequently challenged the attention and ingenuity of legislatures and courts in other states. The very nature of the problem is such that no perfect solution is possible. As stated by Professor Bogart in his text, "The Law of Trusts and Trustees" (1935), Vol. 2, page 926, ( 279, "The difficulty has been to find some method which is at the same time equitable to the life tenant and the person or persons to whom future interests are limited and yet gives adequate protection to the revenues of the state."

Where the eventual recipients of the testator's bounty are not definitely ascertainable at his death because, as in the instant case, they are made dependent upon future contingencies, the total inheritance tax liability may vary considerably, depending upon (1) the number of persons who may take (2) their relationship to the testator or, (3) the tax exemption of possible takers, such as charities. An infinite number of different methods of assessing inheritance taxes upon these uncertain future interests have been evolved by different states at different times.

Some states make the tax on uncertain future interests payable immediately at the highest possible rate (i.e., upon the assumption that the contingency, however improbable, will occur which will result in the greatest tax) with provision for refund in the event the property actually passes to beneficiaries taking at a lower rate. In re Rice's Estate (1925) 164 Minn. 139, 204 N. W. 543; In re Blum's Estate (1916), 176 App. Div. 189, 162 N. Y. S. 458. Other statutes distinguish between technically vested and contingent remainders, making the tax payable upon the death of the testator in the case of the vested remainder, but postponing the payment of the tax until the happening of the contingency in the case of a contingent remainder. Commonwealth v. Cambrou's Executor (1914), 155 Ky. 577, 165 S.W. 979; In re Roosevelt, (1894), 143 N. Y. 120, 38 N. E. 281, 25 L. R. A. 695; Ayers v. Chicago Title & Trust Co. (Ill. 1900), 58 N. E. 318; Williams, Commissioner v. McFarland (Tenn) 37 S. W. (2d) 116.

In other cases, we find the tax postponed, until the eventual takers come into possession, even upon the technically vested remainders, if the remainder, though vested is subject to defeasance, or opening to admit others of the class, Moore v. Commonwealth, (Va. 1930) 155 S. E. 635.

The history of the changing provisions in the inheritance tax statute of New York for the treatment of future contingent interests (prior to the adoption by New York of an estate tax in 1930) clearly illustrates the variety of possible approaches to the problem. This legislative history is traced in a most interesting manner by Mr. Justice Brandeis in Salomon v. State Tax Commission, (1929) 278 U. S. 484 at page 487:

". . . Since the enactment of the Transfer Tax Law in 1885 (Ch. 483), the aim of the Legislature has been at all times to adopt a method of laying the tax which would be fair to both the life tenant and the future interest and would protect the revenues of the State. From time to time, various methods for doing this were tried. Experience revealed their defects. Under the original law and the early amendments, the transfers to contingent remaindermen were not taxable upon the testator's death, Matter of Cager, 111 N. Y.

Honorable George H. Sheppard, Page 4

343.   They were taxable at the time when they vested in possession, Matter of Stewart, 131 N. Y. 274. And the tax then payable was computed upon the value, as of the testator's death, of the property transferred, less the value of the intervening life estate, Matter of Sloane, 154 N. Y. 109.   Under this method the revenue derived from the tax on the contingent remainder was less than it would have been had the remainder been a vested one.   For the State lost the benefit of the money during the period intervening between the death of the testator and that of the life tenant.   To overcome this loss to the State and the discrimination thereby in favor of the contingent remaindermen, the Legislature provided by Chapter 284 of the Acts of 1897 that the tax payable on the vesting of the contingent remainder should be measured by the full value of the property as of the testator's death, without deducting the value of the intervening life estate, Matter of Seligmann, 219 N. Y. 656. This statute, while on its face eliminating the discrimination in favor of contingent remaindermen, was found to result in serious loss of revenue to the State.   Taxes escaped collection when they became due, because it proved to be impossible to ascertain currently when the contingencies happened and hence when a tax became payable. To remedy this defect, it was provided by Chapter 76 of the laws of 1899, that the tax must be paid upon the testator's death; and that it should then be paid out of the corpus of the estate at the highest applicable rate, with a provision for paying to the remaindermen the surplus with interest if it should prove that a lower rate was applicable, Matter of Vanderbilt, 172 N. Y. 69. This provision, while fully safeguarding the State's revenues, favored the remainderman at the expense of the life tenant.   Matter of Brez, 172 N. Y. 609. For under this provision the life tenant lost the income on the full amount deducted to ensure payment of the tax on the contingent remainder; and the remainderman received from the State with interest such part thereof as proved not to be required for the ultimate payment of the tax. Thereupon some relief to the life tenant was afforded by Chapter 800 of the Laws of 1911. . ."

Honorable George H. Sheppard, Page 5

### DISTINCTION BETWEEN TECHNICALLY VESTED AND CONTINGENT INTERESTS IMMATERIAL FOR TAX PURPOSES

We have stated the problem here involved to be the assessment of inheritance taxes upon uncertain future interests. We use the term "uncertain future interests" advisedly, intending thereby to include all interests whose ultimate recipients in possession cannot be definitely determined at the death of the donor. This includes not only what were technically known to the common law as contingent remainders, and executory devises, but also those remainders, which, though technically "vested" are subject, upon contingencies, to partial or complete defeasance. So far as the application of inheritance taxes are concerned, the metaphysical distinctions of ancient property law between "vested" and "contingent" remainders should have no significance.

The American Law Institute, in its Restatement of the law of property has discarded entirely the term, "contingent remainder", and classifies all remainders in the following four categories: (Vol. II, Sect. 157, page 541)

"A remainder can be:

(a) indefeasibly vested:
Illustration: 'to B for life, remainder to C and his heirs' - C has a remainder indefeasibly vested.

(b) vested subject to open
Illustration: 'to B for life, remainder to the children of B' - B has a child C. C has a remainder vested subject to open and let in other children born to B

(c) vested subject to complete defeasance
Illustration: 'to B for life, remainder as B shall by will appoint, but in default of appointment, remainder to C and his heirs' - C has a remainder vested subject to complete defeasance by B's exercise of the power of appointment conferred on him.

(d) subject to a condition precedent
Illustration: 'to B for life, remainder
to C and his heirs, if, but only if, C shall
attain the age of 21 years' - C is 10 years
of age. C has a remainder subject to a con-
dition precedent."

The Restatement explains that under the common
law property rules, examples (a), (b) and (c) would all
be classified as "vested remainders", and only (d) would
be technically a contingent remainder. When we consider
the examples from a purely practical standpoint, it is
apparent that the uncertainties of the remainderman even-
tually coming into the full possession and enjoyment of
his interest, are as great in examples (b) and (c), though
technically vested, as they are in example (d) which is
technically a contingent remainder. Certainly, from the
standpoint of the inheritance tax, the problems of assess-
ing the present value of the remainder interest are no
more difficult in example (d) than they are in examples
(b) and (c). It is only in the case of example (a) that
the present valuation of the remainder interest permits the
application of a mathematical formula with reasonable ac-
curacy.

When first confronted with the problems of the
application of inheritance tax statutes to uncertain future
interests, many courts followed the distinctions of the
common law between technically "vested" and "contingent"
interests. It has been the modern trend, however, to dis-
regard this distinction and look to more practical consid-
erations; i.e., the probability of this particular interest
eventually coming into the possession and enjoyment of the
beneficiary.

"While there are important technical dif-
ferences between vested and contingent remain-
ders in the law of Property, there is little
difference in substance. Whether a remainder
is vested or contingent is largely a matter of
phraseology, and that can hardly control the
immediate question. Alienability seems to be
perhaps the common element of interests that
are protected as vested. At common law con-
tingent remainders were inalienable and could
be destroyed by tortious feoffments. But the
differences in the property incidents of the

Honorable George H. Sheppard, Page 7

two-classes of remainders have now been almost universally nullified by statute." - 19 Harvard Law Review 122.

"That an estate in remainder is vested does not imply a certainty that it will ever actually take effect in possession, because every remainder of a life estate or fee tail is subject to uncertainty in this respect, consequent on the possibility that the precedent estate may outlast the estate in remainder by reason of the death of the remainderman, or his death without issue, before the determination of the precedent estate." - 31 Corpus Juris Secundum 90, Sec. 69, citing numerous cases.

The modern tendency to disregard the technical distinction between "vested" and "contingent" future interests in the application of inheritance or estate taxes is exemplified by the following quotations:

"Remainders are to be appraised at their present value. Matter of Zborowski, 213 N. Y. 113, 107 N. E. 44. They are gifts like present interests. In fixing their value, no distinction is to be drawn between the classes of remainders, whether vested or contingent. (Emphasis ours) For the purpose of taxation the contingency is eliminated and the gift is classed as absolute. Matter of Terry, 218 N. Y. 218, 112 N. E. 931." - Cordozo, J., in In re Parker's Estate (1919) 226 N. Y. 260, 123 N. E. 366.

"We do not stress the distinction between the gift of a contingent remainder and the gift of a vested remainder which is subject to divestment upon the happening of a contingency. We base our decision primarily upon the nature and practical effect of the contingency." - Lehman, J., in Re Gregan (1937), 275 N. Y. 337, 9 N. E. (2d) 953, 112 A. L. R. 260 at p. 264.

"The inescapable rationale of this decision (Klein v. U. S., 283 U. S. 231), rendered by a unanimous Court, was that the statute taxes not merely those interests which are deemed to pass

Honorable George H. Sheppard, Page 8

at death according to refined technicalities of the law of property. It also taxes inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor. It refused to subordinate the plain purpose of a modern fiscal measure to the wholly unrelated origins of the recondite learning of ancient property law." (Emphasis ours) - Frankfurter, J., in Helvering v. Hallock (1940), 309 U. S. 106, at p. 110; 60 S. Ct. 444, 84 L. Ed. 604, 125 A. L. R. 1368.

### TEXAS INHERITANCE TAX STATUTE REQUIRES PAYMENT OF ALL TAXES AT DECEDENT'S DEATH

There is no suggestion in the Texas inheritance tax statute to indicate a legislative intent to differentiate between technically "vested" and "contingent" future interests. Our inheritance tax statute manifests throughout a clear intention on the part of the Legislature to make all the property passing from the decedent to his beneficiaries, taxable at his death, whether the interests of the several beneficiaries be possessory or future; vested or contingent. Nowhere do we find any provision which would authorize the postponement of the assessment or collection of the tax to await happening of contingencies or the ripening of future interests into possessory estates. In fact, the contrary intention is to be found throughout Chapter 5 of Title 122. This fact was most forcibly pointed out in the opinion of Assistant Attorney General F. C. McKinsey to the Comptroller relating to the Estate of J. Perry Burrus, dated July 27, 1933; wherein it was held that the entire estate of the testator was presently taxable in spite of the fact that his will provided for a gift to charity in the event of the death of his two children without issue. We quote from this opinion:

"The first question is as to whether our statute provides for the present payment of an inheritance tax or whether, in a case like this, payment should be postponed until the takers come into possession of their estate.

"30 A. L. R. 465-478, Section II, states the law as follows:

"'The time when an inheritance or succession tax is required to be paid is largely a matter of statutory construction. * * * Any inquiry as to the law in any particular State should start with an examination of the current statute.'

"Referring to the statute, Article 7117 provides that property 'shall upon passing to or for the use of any person * * * be subject to a tax.'

"We submit that the property 'passes' at the death of the testator, although his intention and the effect of the will is that it take effect 'in possession and enjoyment' afterwards. Adverse counsel concede that the tax on the estate should be levied at this time, 'but that payment should not be made until when and if the contingencies provided for in the will actually happen.'

"By Article 7130 the taxable values of each taxable interest in the estate must be presently determined.

"By Article 7131, upon the coming in of the report of the appraisers, the county judge is to calculate and determine the amount of the tax due on each share and to certify such amount to the person to whom or for whose use the property passes. This seems to take no account of persons not in being, or whose identity is so remotely contingent and uncertain that they cannot be ascertained. Said article also provides: 'Said tax shall be a lien upon said property from the death of the decedent until paid.'

"Article 7135 provides for a lien on all the property subject to taxation to secure the payment of all taxes, penalties and costs provided for in the chapter. This means that a lien exists not alone on the several portions

or interests to secure the tax due on each, but that the tax due on each bequest or interest is a lien on all the property of the estate.

"Article 7134 provides that if the amount of the tax due under the law is not paid in three months from the date of said assessment, same shall draw two per cent penalty, etc., and if not paid in nine months, the county or district attorney shall file suit immediately to foreclose the tax lien.

"Article 7135 provides that no final account of any executor, administrator or trustee shall be approved by the county judge unless such account shows, and the judge finds, that all taxes imposed under this law on any property or interest passing through his hands has been paid. Nor shall the county judge close an estate, or permit the delivery of any property to the legatee or heir, without first ascertaining that the taxes have been paid.

"Article 7136 provides that no notes, bonds, stocks, etc., subject to taxation, shall be transferred or delivered to legatee or heir until the Comptroller has ascertained and certified that all the inheritance taxes due the State have been paid, and Article 7137 makes any corporation who violates said provision liable for the unpaid taxes and penalties and costs collection.

"Jack Burrus is thirty-eight, and his sister, Kathryn, is forty years of age; their life expectancies are approximately twenty-nine and twenty-eight years, respectively. Add to these the twenty-one year trust period provided for after their death and we have approximately fifty years before it could be definitely ascertained who will ultimately come into said remainder estate. Under the contention of counsel, the payment of the taxes might be suspended for fifty years, and during that period the final report of the executors could not be approved;

the estate could not be closed, and no distribution thereof could be made. We submit that such is entirely inconsistent with the provisions of our statute and that the Legislature could not have intended any such result. It is, therefore, our conclusion that all inheritance taxes provided for by the Texas statutes are presently payable.

"It is contended by counsel that the estate remaining upon the death of Jack and Kathryn cannot be taxed until it shall be definitely ascertained who will ultimately come into said estate. I cannot agree with this contention.

"Our statute provides for just such a contention. Article 7123 provides that if the property passing shall be divided into two or more estates, as an estate for life or for live and a remainder, the tax shall be levied on each estate or interest separately, according to the value of the same at the death of the decedent. The value of estates for years, estates for life, remainders and annuities, shall be determined by the Actuaries Combined Experience Tables, at four per cent compound interest."

It may be conceded (as indicated by Judge Cordozo in his opinion in Salomon v. State Tax Commission, quoted above) that to require all inheritance taxes to be paid at the death of the testator, is unfair (1) in that the life tenant's income is reduced insofar as the principal of the trust is reduced to pay the inheritance taxes upon the remainder interests, (2) in that higher or lower taxes may be paid than the ultimate disposition of uncertain future interests would require. Unquestionably, under the Texas statute this is required to be done. But such a requirement, involving this element of theoretical unfairness, does not render the statute invalid. To quote again from Salomon v. State Tax Commission (1928), 278 U. S. 484 at page 491:

"The fact that a better taxing system might be conceived does not render the law invalid. As was said in Metropolis Theatre Co. v. Chicago, 228 U. S. 61, 69-70, 'To be able to find fault with a law is not to demonstrate its invalidity . . . The problems of government are practical

Honorable George H. Sheppard, Page 12

ones and may justify, if they do not require, rough accommodations --illogical, it may be, and unscientific.' . . . To all such objections it may be answered that minor inequalities and hardships are incidents of every system of taxation and do not render the legislation obnoxious to the Federal Constitution. General American Tank Car Corp. v. Day, 270 U. S. 367."

And at page 490:

". . . The due process clause places no restriction on a State as to the time at which an inheritance tax shall be levied or the property valued for purposes of such tax. Compare Cahen v. Brewster, 203 U. S. 543."

As said in 29 Columbia Law Review 160 (1929):

"It has long been undisputed that the postponement of possession of the transferred res does not of itself prevent the valid imposition of an inheritance tax. Since in theory the transfer tax is a tax on the privilege of succession and not on the property transferred, it seems quite proper that the successors to any part of the decedent's interest, whether the vesting in possession be in the present or future, should be subject to the charge."

From the foregoing, we have concluded: (1) That for inheritance tax purposes, it is immaterial whether future uncertain interests are technically "vested" or "contingent" (2) that the Texas statute requires the assessment and payment of all inheritance taxes upon the death of the decedent, even though (a) it makes the remainderman's taxes payable out of the corpus of the estate (b) it requires the rate and the amount of tax to be based on mere "guess" as to the ultimate disposition of future interests, (3) that in spite of such failings, such a tax is nonetheless constitutional.

Honorable George H. Sheppard, Page 13

## METHOD OF COMPUTING TAX UPON FUTURE INTERESTS

With these conclusions in mind, we turn to a consideration of the proper method of assessing the tax upon uncertain future interests. We submit that the only alternative under our statute is to base the assessment upon the most probable of possible future contingencies. This rule is expressly adopted by statute in the State of Washington, and applied by the Court in In re Eaton's Estate (1932) 107 Wash. 280, 18 Pac. (2d) 433.

In that case the testatrix had left her property to her two adopted children (aged 15 and 16 respectively) at her death, with provision that "in the event that both of my said adopted children shall die before arriving at majority unmarried and without issue, then (to) my sister Julia or her heirs." Under the Washington statute, the property passing to the children was taxable at a rate of 1%, but if it went to the sister's heirs, it was taxable at 10%. The court held that the tax was to be computed as though the property would eventually pass under the most probable contingency. We quote:

"The present (1929) statute requires the payment of the tax immediately upon the transfer of the property at the highest rate probable; that is, the word 'possible' was changed to 'probable' and the court was vested with the power to adjust the tax if same 'appear to be excessive.'

"While it is possible that the two children may not reach their majority, it is likewise possible that some of the other contingencies may never happen. We judicially know that it is more probable or more likely that the two children will arrive at their majority, rather than predecease the decedent's sister or the heirs of the latter. We can hardly hold as a matter of law that the probability is that the two children of the ages of 15 and 16 years will not survive their mother's sister. We agree with the trial court that the probabilities are all in favor of the estate vesting in the lineal heirs, and that the tax would be computed upon that basis under the provision of the statute."

Honorable George H. Sheppard, Page 14

It is true that in the above case the Washington statute expressly directed the computation of the tax based upon the happening of the most __probable__ contingencies provided in the will. It seems to us, however, that even in the absence of such express statutory provision, the tax must of necessity be computed upon the basis of the most __probable__ contingencies, where the statute requires (as in Texas) the payment of all taxes upon the death of the testator. Such was the conclusion of the court in In re Nesbitt's Estate (1923), 198 N. Y. S. 451, affd. by Ct. of App., 237 N. Y. 527, 143 N. E. 729, where there was no statutory direction to assess the tax on the uncertain future interests upon "probabilities", and where the will provided for a charitable gift upon a remote possibility. In assessing the tax, the court simply looked to the probabilities of the case and ignored entirely the remotely possible gift to the tax exempt charity. We quote from the opinion of the court in the Nesbitt case, at page 454:

"The contingent remanders taxed in the two trusts with a gift over to an exempt hospital corporation in the event of the failure of issue of the original cestuis que trust, cannot be held too remote to be assessed at their present value at this time. Matter of Parker's Estate, 226 N. Y. 260, 123 N. E. 366. the devise is to the children of the testator's deceased daughter and in default of their taking by death before vesting, to their issue, and in default of issue, to the hospital corporation. The contingency here is not remote; it is limited only on two lives, and the probability of issue of the grandsons; and the possibility of their taking is presently taxable."

Since inheritance taxes are based upon the value of property received by the various beneficiaries, and the statutes usually prescribe a graduated tax and specific exemptions for the beneficiaries depending on the size of their respective bequests and their degree of relationship to the deceased, the problem of taxing uncertain future interests is usually more complex under an inheritance tax, than under an estate tax such as the Federal Government's. The problem is identical, however, under the two types of statutes, where there is an uncertain future gift to a tax exempt charity. The federal decisions in such cases, are

therefore helpful. It is significant that in these cases the United States Supreme Court has adopted the rule of probability, as illustrated by the following two decisions.

In Ithaca Trust Co. v. U. S. (1929), 278 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, the court considered the assessment of the federal estate tax upon an estate which had been left in trust, the income, and so much of the principal as "may be necessary to suitably maintain her in as much comfort as she now enjoys" to be paid to the widow of the testator for her life, with the entire remainder passing to a tax-exempt charity. The widow actually died within a year of the death of the testator, and before the tax had been assessed. The government urged that that proportion of the value of the estate attributable to the tax-exempt charity should be reduced because of the right given to invade the principal for the support of the widow. The estate contended, on the other hand, that since the widow actually died before the assessment of the tax, her life estate should be valued upon its actual short duration, rather than upon the widow's life-expectancy at her husband's death. Both of these contentions were rejected by the court, on the ground that the tax must be assessed upon the basis of the probabilities as of the date of the testator's death. The court found that the income from the property was in fact amply sufficient to support the widow without the necessity of dipping into the principal; and that the widow's life-expectancy at her husband's death, based upon the accepted mortality tables, must be the basis of evaluating her life estate, even though subsequent events belied the accuracy of such prediction. Said Mr. Justice Holmes:

"There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

Humes v. U. S., 276 U. S. 487, 48 S. Ct. 347, 72 L. Ed. 667, presented a tax problem very similar to the instant case. The testator left his property in trust for his niece (aged 15 at his death), she to take the property free of the trust at the age of 40, but if she died without issue before attaining the age of 40, then the property was to go to certain charities. The estate sought to reduce the taxable value of the estate by the estimated present value of the possibility that the charities might come

into possession. But the court, again announcing that the tax must be based upon the most probable future events, rejected this contention and held that the possibility of the charities taking was so remote as to be disregarded for tax purposes. Brandeis, J., speaking for the court at page 494:

> "Did Congress, in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither the taxpayer, nor the revenue officer—even if equipped with all the aid which the actuarial art can supply—could more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character."

## ASSESSMENT OF TAX IN ADEY ESTATE

Applying these principles to the Grace Adey Estate, it is our opinion that you have correctly assessed the tax, as outlined in your letter. As stated in the brief submitted by the attorney for the bank, "both sisters of decedent are elderly and several years older than the nephew." Based upon their respective life expectancies, it is probable that the nephew will outlive the sisters. The possible contingency that the charity might take should be disregarded for purposes of computing the tax. The taxes are presently payable out of the estate and judgment therefore might be recovered against the executor. State v. Hogg (1934), 123 Tex. 568, 70 S. W. (2d) 699, on rehearing 72 S. W. (2d) 593.

We do not agree with the opinion of the Bank's attorney that the assessment and collection of the tax upon the remainder interest to the nephew must be deferred until the death of the life tenants. In support of this contention, he cites the following passage from In re Hollander's Estate, 123 N. J. Eq. 52, 195 Atl. 805, which was quoted with approval by the Austin Court of Civil Appeals in Bethea v. Sheppard, 143 S. W. (2d) 998:

> "The test of taxability is not the time of the complete divesting of the transferor's interest or ownership, it is the time of the

complete succession by the transferee. Where
there is a transfer of a specific interest in
property and the succession of the transferee
does not become and under the terms of the trans-
fer is not to become, complete until a time at
or after the death of the transferor, that trans-
fer is taxable. 'The distinction . . . rests on
. . . whether the donee is deprived of an in-
terest of some kind . . . until the donor's death.'"

In both the Hollander and Bethea cases the courts
were discussing the problem of when an inter vivos transfer
may be taxed as a testamentary disposition under the pro-
visions of the statutes in the respective states making
such transfers subject to an inheritance tax when "made or
intended to take effect in possession or enjoyment after the
death of the grantor or donor." It is apparent that the
above quoted language cannot apply to the question of whether
the assessment and payment of a tax upon a remainder in-
terest may be postponed until the death of the life tenant,
because the words "transferor" and "donor" cannot be applied
to a life tenant, unless he have a power of appointment.

The contention of the Bank's attorney as to the
time when the tax upon the remainder interest of the nephew
is payable is refuted by the court in the Bethea case , at
page 1003:

"At the death of grantor or settlor the
full possession and enjoyment of all of the
trust estate vested in appellant through the
trustee, subject to be defeated only in part
by her remarriage prior to the end of the eight
year period after the death of grantor. Mani-
festly the statute does not authorize the
postponement of the tax to await such contin-
gency or condition subsequent, and these con-
clusions answer all alternative contentions of
appellant that only portions of the value of
the corpus or principal were taxable. Our
above conclusions also deny the contention of
appellant that the tax should be postponed to
determine what eventuality might happen during
the eight-year period after the death of grantor
or settlor. Nothing in the statute authorizes

such postponement of the tax; but to the contrary it shows that the legislature intended that the tax become due and payable immediately after the death of grantor, at which time appellant, through the trustee, came into full possession and enjoyment of the entire trust estate, which right of enjoyment the statute taxes." (Emphasis ours)

Nor are we persuaded by the effort to distinguish between Mrs. Rethea's interest and the interest of the nephew here. Under the classification of remainder, made by the American Law Institute, quoted above, the nephew has a vested remainder, subject to complete defeasance.

The Bank's attorney argues that if the charity should eventually come into possession, the executor might be liable to it for inheritance taxes paid upon the nephew's remainder interest. Upon this theory, every charity having a remainder absolutely vested, dependent upon a life estate, would have a right to recover from the executor for part of the inheritance taxes paid on behalf of the life tenant in the event the life tenant died prior to his life expectancy, upon which the taxes were assessed and paid. Such a theory is refuted by Ithaca Trust Co. v. U. S. (1929), 27 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, cited above.

We are returning to you herewith your file on this Estate.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Walter R. Koch*
Walter R. Koch
Assistant

WRK:LM

ENCLOSURE

APPROVED AUG. 26, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN