LILLIAN G. LIBMAN, Plaintiff, *v.* ABRAM L. LIBMAN, Defendant.

(Supreme Court, New York Special Term, February, 1918.)

Marriage — action for annulment of — false representations — evidence.

Where in a wife's action to have her marriage with defend-, ant annulled for fraud it appears that he procured plaintiff's consent to the marriage by false representations as to his past life, though frankly stating it was not spotless and that he knew plaintiff regarded these matters as material, without·

which she would not have married him, and neither the interests of the community nor of their child require that the court should refuse to free the plaintiff from the marriage, she will be given judgment annulling same.

ACTION to annul a marriage.

House, Grossman & Vorhaus (Leo R. Brilles, of counsel), for plaintiff.

William Abramson, for defendant.

LEHMAN, J. The evidence establishes to my satisfaction that prior to entering into a promise to marry this defendant the plaintiff requested her father to see the defendant and to question him in regard to certain matters which she regarded as essential to a happy marriage. The plaintiff's father did question the defendant, and he answered these questions falsely. Upon these false representations the plaintiff promised to marry the defendant, and now after a lapse of years, during which a child was born, has brought this action to annul her marriage. The misrepresentations made by this defendant did not concern any of those matters which the law regards as essential to that relation or even which common experience has shown to be very material to a happy marriage. While this particular marriage has turned out unhappy, and the plaintiff and the defendant are living separate, yet it appears that they separated before the plaintiff learned of the falsity of the defendant's representations and for entirely different causes. These representations do not seriously affect the moral character of the defendant, according to the standards of a large proportion of the community, and while a frank disclosure of these matters on his part to the plaintiff's father would, under the circumstances shown, have been fair and proper, even without questioning on the

father's part, yet the law certainly does not require
such disclosure, nor would mere concealment consti-
tute a fraud. The defendant was, however, directly
questioned on these matters and knew that the plain-
tiff regarded them as material, and if the truth was
told her she would refuse to marry him. I have little
doubt that the defendant did not make these false state-
ments with any purpose of inveigling the plaintiff into
a marriage which would prove unfortunate for her.
Probably he supposed that the actual facts would never
come to plaintiff's ears and that his past was com-
pletely buried; probably, too, he felt that, if complica-
tions arose after his marriage by reason of old rela-
tions which he had denied, a loving wife would help him
assume the burden of these complications and forgive
his falsehood especially as he had frankly stated that
his past was not spotless. The fact, however, still re-
mains, as I view the testimony, that the defendant did
procure the plaintiff's consent to the marriage by
representations that he knew to be false and that he
knew the plaintiff regarded as material and without
which she would not enter into the marriage contract
with him. In this case it is not the duty of the court
to determine the motives of the parties or to excuse or
blame. The court must decide only whether the plain-
tiff was induced to enter into the marriage contract
by the defendant's fraud and whether a court of equity
should annul the marriage for this fraud after the
marriage contract has ripened into a marriage status.
In the case of *di Lorenzo* v. *di Lorenzo,* 174 N. Y. 467,
the court said at page 472: '' It is a general rule that
every misrepresentation of a material fact, made with
the intention to induce another to enter into an agree-
ment and without which he would not have done so,
justifies the court in vacating the agreement. It is
obvious that no one would obligate himself by a con-

tract, if he knew that a material representation, entering into the reason for his consent, was untrue. There is no valid reason for excepting the marriage contract from the general rule." In the case of *Domschke* v. *Domschke,* 138 App. Div. 454, the court decided in effect that any misrepresentation is material where without such misrepresentation the party would not have consented to the marriage, citing with approval the statement in Bigelow on Fraud (vol. 1, p. 497): "A party who has effected his purpose through a misrepresentation cannot deny its materiality." Under the authority of these cases, if the marriage contract had not been consummated, the court would unhesitatingly order its annulment, for the evidence shows that the plaintiff's consent was obtained by representations which were false, which the defendant knew to be false and which the defendant made for the purpose of obtaining the plaintiff's consent, with notice that if the true facts were known to the plaintiff she would not give her consent. The serious question in the case, however, is whether upon these facts the marriage should be annulled after it has ripened into a status and especially after a child has been born. It seems now to be well established that a court has the power to annul the marriage contract after it has been consummated as well as before. It would seem, however, that after the marriage has ripened into a status, and especially where issue has been born, considerations of public policy enter which must frequently deter the court from exercising this power. Marriage is a contract under our law, but it results in the establishment of a relation which the state will not dissolve without strong grounds. Wherever consent to the establishment of such relations has been obtained by fraud, the courts should annul the contract if thereby it can spare the innocent party

from the necessity of actually entering into the relationship. Where, however, the relationship is consummated and the annulment of the contract cannot completely destroy the results of the established relationship the state itself frequently is interested in its maintenance. In such circumstances the court must not only be convinced that the consent of the plaintiff has been obtained by fraud, but it must also determine whether the interests of the community and the interests of the children of the marriage do not require that the court shall refuse its process to destroy the established status, wherever the fraud does not affect the essentials of that status. The present case, however, presents no property complications, no refusal by a husband to support a dependent wife, no refusal by a wife to care for a sick or helpless husband, and neither the interests of the community nor of the child require that the court should refuse to free the plaintiff from a contract to which her consent was obtained by misrepresentation and from a relationship in which no party is obtaining any benefit.

Judgment for plaintiff.