MARIO COPPO, Plaintiff, *v.* MARGARET COPPO, Defendant.

Supreme Court, Dutchess County, April 29, 1937.

Vincent *diGennaro* [*Herman N. Harcourt* of counsel], for the plaintiff.

*William B. Duggan* [*Philip A. Mylod* of counsel], for the defendant.

MORSCHAUSER, Official Referee. This is an action to annul a marriage between the parties herein upon the ground of fraud. The defendant defaulted and the action came on for trial before the Supreme Court at a Special Term thereof on the 3d day of April, 1937, held at the court house in Poughkeepsie, N. Y., Mr. Justice ALDRICH presiding. Thereupon the action with the issues therein was referred to me as official referee to hear and determine the said action and the issues therein, and that judgment may be taken of course upon my report and my findings of fact and conclusions of law, and my decision thereon pursuant to section 1174 of the Civil Practice Act.

On April 10, 1937, the action came on before me for hearing and trial. The defendant being in default, but present without counsel, upon her consent I requested Hon. Philip A. Mylod, who was there present, to represent her. He consented and retired with the defendant for consultation. Thereafter Mr. Mylod returned to the court room with the defendant and stated that the defendant was ready to proceed to trial and hearing but did not desire to offer any defense. Thereupon the trial and hearing proceeded and testimony was taken. At the close of the plaintiff's case the defendant rested, and I thereupon called the defendant who was sworn and examined by me, and her testimony is returned herewith. The plaintiff stated in his examination that if the defendant would return to him and carry out the contract of marriage and have children, he would discontinue this action. The defendant refused to return to his home or carry out the contract of

marriage and have children, or to carry on the marriage relation. The plaintiff is an Italian by birth and the defendant is American born.

It appears that the plaintiff and the defendant were prior to the marriage of mature years and the plaintiff was in good health, but that the defendant at the time of the marriage was, or claimed to be, in temporary poor health due to worry, sorrow and nervousness caused by the illness, death and funeral of her former husband. It appears that prior to the marriage between the parties while defendant's husband was upon his deathbed and with full knowledge of his imminent dissolution, he called the plaintiff and the defendant to his bedside and there committed to the plaintiff, who had been his intimate friend and associate, the care and protection of the defendant, and upon the plaintiff's natural hesitancy to contemplate the death of defendant's former husband, said husband further in defendant's presence told the plaintiff that if he would marry the defendant, that she, the defendant, would proceed to have children by the plaintiff, and thereupon defendant's former husband while upon the bed in the hospital placed the hands of the defendant and the plaintiff together. A short time after the death of the defendant's former husband the defendant called the plaintiff and reminded him of his deathbed promise to her and husband to marry her after the husband's death, and the plaintiff stated he wanted a family of his own. It appears that the defendant had three children by her former husband. The defendant thereupon promised to have children by the plaintiff if he would marry her, showed him that she had kept her children's baby clothes, and promised that after their marriage they would have a lovely baby boy. Relying upon this promise of the defendant to have children by the plaintiff, and as an inducing cause, the plaintiff married the defendant within two months after the death of her former husband. Following the marriage ceremony the defendant pleaded with the plaintiff, informing him that she was not well and that she was upset and nervous on account of her husband dying, and refused to have marriage relations with the plaintiff unless he used means to prevent conception. To this demand the plaintiff acceded upon the defendant's renewed promise that as soon as she regained her health and strength she would permit marriage relations normally and that the defendant would have children by the plaintiff. This continued for a period of some time, the plaintiff demanding normal marriage relations, but the defendant pleading, urging and begging him to refrain because of her alleged ill health and nervous condition. During this time the plaintiff left the defendant because of the unnatural practices upon which she insisted, and each time

she lured him back again upon the renewed promise that she would bear children by him. The plaintiff called for the intervention of the church and a priest conferred with the defendant in an apparent attempt to induce her to live normally with the plaintiff. The plaintiff's health began to fail, and upon taking medical advice, he was informed that the practices indulged in and insisted upon by his wife were undermining his health, and were dangerous, and if persisted in, might result in his finding himself in the tuberculosis hospital, or possibly result in insanity and his confinement in the Hudson River State Hospital, both of which institutions are located in Dutchess county. Upon this the plaintiff informed the defendant that such practices formerly indulged in could no longer be tolerated and insisted upon natural marriage relations. Thereupon and for the first time the defendant informed the plaintiff that she did not intend to have children, and that at the time of making the promises before their marriage that she would have children, she had no intention of keeping them. This is the fraud alleged by the plaintiff as the basis for the relief in this action. Immediately upon such revelation and confession by the defendant to the plaintiff, the plaintiff left the defendant, has refused to live with her ever since, and has not lived with her or cohabited with her.

The court feels in dealing with actions of this nature, where the rights of the People of the State are involved, as they are in every marriage relationship, that the facts and the authorities should be examined with scrupulous care. The court has made an exhausive examination of all of the leading cases and authorities upon the subject of fraud, as constituting the basis for an action for the annulment of a marriage, which have been decided in the courts of New York for many years.

Fraud has been variously defined. No all inclusive definition can be framed owing to the multiform character of fraud and the great variety of attendant circumstances. Each case must be determined on its particular and peculiar facts. The wisdom of an exact legal definition has frequently been questioned. (See *Du Flon* v. *Powers*, 14 Abb. Pr. [N. S.] 391.)

Actual fraud is intentional fraud, and it has been frequently held that a promise made without any intention of performing it, if made to induce another to surrender some legal right and which accomplishes the end designed, is actual fraud. (26 C. J. 1060.)

" Fraud * * * comprises all acts, omissions, and concealments involving a breach of a legal or equitable duty and resulting in damage to another." (26 C. J. 1059.)

In *DiLorenzo* v. *DiLorenzo* (174 N. Y. 467, at p. 472) the Court of Appeals held: " The free and full consent, which is the essence of all ordinary contracts, is expressly made by statute necessary to the validity of the marriage contract. The minds of the parties must meet in one intention. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement. It is obvious that no one would obligate himself by a contract, if he knew that a material representation, entering into the reason for his consent, was untrue. There is no valid reason for excepting the marriage contract from the general rule." (See, also, *Lapides* v. *Lapides*, 224 App. Div. 257.)

" No satisfactory reason of the law will justify the courts in declaring valid such a contract of marriage when tainted with fraud or duress where the only effect will be the punishment of the innocent." (*Svenson* v. *Svenson*, 178 N. Y. 54.)

" We can conceive of no greater fraud on a woman than for the man at the same time entertaining and carrying out the purpose of forthwith absconding and leaving his wife to her own resources regardless of all the moral and legal obligations imposed by the marriage status. *Misrepresentations of purpose and intention, whether express or necessarily implied, which constitute a material fact inducing another to act, constitute a fraud affecting the validity of a (marriage) contract induced thereby.*" (*Moore* v. *Moore*, 94 Misc. 370, citing *Adams* v. *Gillig*, 199 N. Y. 314.)

In *Robert* v. *Robert* (87 Misc. 629) the defendant had promised to establish plaintiff with him in the hotel business. Consummation had occurred. It then appeared that he did not intend to carry out his promise. The court (at p. 631) said: " Misstatements of intention which are material may, for the purpose of voiding contracts on the ground of fraud, be regarded as misstatements of fact."

Various frauds are recognized by the courts as constituting ample grounds for annulling the marriage: In *Shonfeld* v. *Shonfeld* (260 N. Y. 477) misrepresentation of the defendant as to financial responsibility; *Robert* v. *Robert* (87 Misc. 629) failure to keep promise to go into the hotel business after marriage; *DiLorenzo* v. *DiLorenzo* (174 N. Y. 467), as to parenthood of child born shortly before the marriage; *Domschke* v. *Domschke* (138 App. Div. 454), chastity of wife before marriage; *Blank* v. *Blank* (107 N. Y. 91), representation that wife was a widow when she actually was a divorcee; *Fontana* v. *Fontana* (77 Misc. 28), chastity of defendant wife; *Libman* v. *Libman* (102 Misc. 443), chastity of defendant husband; *Svenson* v. *Svenson* (178 N. Y. 54), venereal disease of

husband prior to marriage but cured at the time of marriage; *Gordon* v. *Gordon* (225 App. Div. 822), misrepresentations as to fact of defendant's pregnancy by plaintiff; *Weill* v. *Weill* (104 Misc. 561), previous marriage of defendant husband and annulment thereof not disclosed to plaintiff.

The following *misrepresentations* and concealments have been held to be sufficient to grant annulments of marriage: Of the fact that defendant was a thief, *Keyes* v. *Keyes* (6 Misc. 355); the defendant, a gambler, *King* v. *Brewer* (8 id. 587); misrepresentation of citizenship, *Truiano* v. *Truiano* (121 id. 635); drug addict, *O'Connell* v. *O'Connell* (201 App. Div. 338); threats inducing marriage, *Fratello* v. *Fratello* (118 Misc. 584); the defendant a consumptive, *Sobol* v. *Sobol* (88 id. 277); concealment of fact of defendant's epilepsy, *Lapides* v. *Lapides* (224 App. Div. 257); no intention of living with plaintiff, *Moore* v. *Moore* (94 Misc. 370).

From the testimony adduced at the trial the conclusion is inescapable that the misrepresentations and promises of the defendant induced the plaintiff to enter into the marriage relationship with her; that such promises were fraudulent in purpose and thereby a fraud was perpetrated by the defendant upon the plaintiff at the inception of the marriage relation, which continued undisclosed until the final declaration and confession by the defendant that she at the time of making such promises had no intention of keeping or fulfilling such promises. Upon the authority of the foregoing cases the plaintiff is entitled to relief unless there has been a waiver of the fraud by voluntary cohabitation with a full knowledge of the facts constituting the fraud of the defendant. Section 1139 of the Civil Practice Act, in part, reads as follows: " An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by force, duress or fraud may be maintained at any time by the party whose consent was so obtained. * * * *But a marriage shall not be annulled* * * * *on the ground of fraud, if it appears that, at any time before the commencement thereof, the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud.*"

The testimony is clear and convincing that full knowledge of the facts constituting the fraud did not come to the plaintiff herein until July, 1936, at which time the defendant herein admitted to him that her promise before marriage was fraudulent at its inception, and that she had no intention of ever fulfilling it. As has been stated previously, the plaintiff thereupon left the defendant.

Cohabitation prior to the discovery of the fraud by the injured party is not a basis for denying the plaintiff his relief under the

statute. It is cohabitation with full knowledge of the fraud which renders the prohibition of the statute (Civ. Prac. Act, § 1139) effective. See *Aufiero* v. *Aufiero* (222 App. Div. 479), in which it was held that where the plaintiff immediately left the defendant upon his disclosure that he never intended to comply with his promise, that this was sufficient to entitle the plaintiff to maintain her action under section 1139 of the Civil Practice Act, although there had been cohabitation before the discovery of the fraud.

In *Jacobson* v. *Jacobson* (207 App. Div. 288), Presiding Justice KELLY enunciates the rule, following the opinion of Judge MARTIN in *Svenson* v. *Svenson* (178 N. Y. 54), continuing as follows (p. 240): " Of course in the case at bar the marriage had been consummated — more than that, the marriage took place on December 25, 1913, and there is a child of the marriage seven years of age at the date of the commencement of the action which was not until June 12, 1922. * * * There does not appear to be any dispute about the defendant's unfortunate condition at the date of the trial, and the trial judge finds that plaintiff did not discover the facts until 1920, since which time she has not cohabited with him. She could, therefore, maintain an action to annul the marriage upon the ground of fraudulent concealment of his condition known to him at the time."

In *Rubman* v. *Rubman* (140 Misc. 658) the defendant, an alien, married the plaintiff, an American citizen, as part of a scheme to accomplish the entry of the defendant into the United States. The marriage was consummated, but shortly after it the defendant informed plaintiff that he never loved her and never intended to live with her, and had married her only to get into the United States, whereupon plaintiff left defendant, sued for and obtained an annulment of the marriage.

The leading and most illuminative case upon obligations of the parties to a marriage contract is *Mirizio* v. *Mirizio* (242 N. Y. 74), in which Chief Judge HISCOCK (at p. 81) says: " But the refusal of husband or wife without any adequate excuse to have ordinary marriage relations with the other party to the contract strikes at the basic obligations springing from the marriage contract when viewed from the standpoint of the State and of society at large. However much this relationship may be debased at times it nevertheless is the foundation upon which must rest the perpetuation of society and civilization. If it is not to be maintained, we have the alternatives either of no children or of illegitimate children, and the State abhors either result. The mere fact that the Law provides that physical incapacity for sexual relationship shall be ground for annulling a marriage is of itself a sufficient indication

of the public policy that such relationship shall exist with the result and for the purpose of begetting offspring."

The law implies proper sex relation in every contract of marriage. Continual refusal after marriage without reasonable excuse therefor is enough to invalidate the marriage.

In a very recent case (*Antonelli* v. *Antonelli*, N. Y. L. J. Feb. 16, 1937, p. 801) Mr. Justice ROSENMANN found, " Judgment for plaintiff. Although I believe there was consummation of the marriage, there was none after the discovery by the plaintiff that no religious ceremony was going to be entered into by the defendant."

In *Rubman* v. *Rubman* (*supra*, at p. 670) the court states: " Where there is fraud going to the essence of the marriage contract, it will not be validated by cohabitation, unless at the time the innocent party knows of the fraud, when such intercourse is said to be with marital intent and the contract is then regarded as affirmed or ratified and therewith consummated. There can be no consummation and marital status unless and until the innocent party knows of the fraud, and the parties thereafter have intercourse, or cohabit with marital intent."

Ratification or waiver may be established in many ways other than by cohabitation after the discovery of the fraud. It would seem that oral forgiveness after full confession would be sufficient, and particularly so if followed by cohabitation. It has been held that entering into a separation agreement, and thus recognizing the validity of the marriage, constitutes a waiver of the original fraud and that an annulment cannot thereafter be granted. (*Pellerin* v. *Pellerin*, 123 Misc. 552; *Butler* v. *Butler*, 204 App. Div. 602.)

So far as the conduct of the plaintiff in leaving the defendant upon prior occasions, and then being induced to return upon the defendant's reiterated and renewed promises to carry out her original promises, and the conduct of the plaintiff in relying upon such renewed promises and resuming such marital relationship and cohabitation, may be deemed to be fraud, this is renewed fraud added to the previous fraud upon the part of the defendant, and will not be construed as constituting a ratification of the fraud by the plaintiff or waiver of the plaintiff's rights. The law has its inconsistencies, but to hold that further deception successfully consummated renders the plaintiff remediless as to the prior deception would perpetrate a legal jest, the grim humor of which would hardly suffice to counteract the hardship imposed.

As a matter of fact the original promises and representations, and the subsequent promises and representations by the defendant, reiterating and affirming the previous promises, constitute a continuing fraud, and until the plaintiff, through the revelation by the

defendant of her entire lack of intention ever to fulfill such promises and representations, has full knowledge that a cheat has been perpetrated, and that a fraud has been committed, the Statute of Limitations does not run against the action. No action could be brought before such revelation, because there was and could be no knowledge on the part of the plaintiff sufficient to cause the bringing of the action. In this case the conduct of the plaintiff in acquiescing temporarily in the practices insisted upon by the defendant in order to prevent defendant's pregnancy was a kindly and considerate act upon the part of the plaintiff. That he is a kindly, sympathetic and considerate person is evidenced by the deathbed scene in which he took part, and his being so affected by the sympathy which he felt for the wife of his friend, to marry her in the first instance. The primary condition, however, which he placed upon that marriage was that the defendant would have children by him. This was in his mind a most important essential of the marriage relationship, and he very particularly and meticulously insisted that the defendant should consent and lend her co-operation thereto. After the marriage he was induced temporarily not to insist upon the immediate carrying out of the promise because of the alleged physical condition of the defendant. His sympathetic kindness and consideration will not now be permitted to be used as a sword against him to prevent him from obtaining the remedy which he seeks, and to deny him the justice to which he is entitled. It should be remembered that the temporary failure of the plaintiff to insist upon the performance of a certain obligation does not for all time bar the plaintiff from subsequent insistence. Particularly is this so when, as in this case, the plaintiff and the defendant both understood and agreed at the time of such temporary relinquishment that it was temporary only and actuated solely because of consideration for the defendant's alleged temporary ill health and nervous condition. The fraud continues. The original promise survives. This is not a question of abatement and revival, but of an absolute continuation of the fraud, not discovered until circumstances and conditions subsequently were such that the defendant was compelled to reveal to the plaintiff the fraud which she had perpetrated.

The evidence in this case is uncontroverted. There is nothing inherently unbelievable in the testimony. " The positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by court or jury arbitrarily or capriciously. They are bound to believe, for judicial purposes, such testimony." (*Lomer* v. *Meeker*, 25 N. Y. 361, 363.)

I, therefore, decide and find from the evidence herein and upon the authorities hereinbefore set forth, that the defendant was guilty of the fraud practiced upon the plaintiff and as claimed by him in his complaint herein. It has been said that love is blind. It has been the cause of much happiness, and the means toward many miseries and many tragedies. The plaintiff is, therefore, entitled to an interlocutory decree annulling the marriage heretofore existing between the parties to this action. Common sense, equity and justice require this determination. Interlocutory decree for annullment of said marriage should be granted accordingly. I have signed this decision with my findings of fact and conclusions of law, with my report herein, and they are attached hereto and made a part hereof.

All of the testimony, pleadings and exhibits are returned herewith and filed in the Dutchess county clerk's office.