ROSALYN LEMBO, Plaintiff, *v.* FRANK LEMBO, Defendant.

Supreme Court, Special Term, New York County, January 25, 1949.

*Harry J. Coman f*or plaintiff.

No appearance for defendant.

EDER, J. Plaintiff sues to annul her marriage to defendant. She alleges her desire and intention to have children of the union, and avers that defendant, in order to induce her to marry him, stated and represented to her that he had a similar desire and intention, and that, relying thereon, and believing them to be true, she consented to and did marry the defendant, but that following the marriage he has refused to have children, has insisted on the use of contraceptives and has refused to have normal sexual intercourse with her; that had she known the truth as to the defendant's intentions she would not have consented to the marriage, and that since her discovery of the fraud practiced upon her by the defendant she has not cohabited with him.

The suit is uncontested.

The cause was referred to an official referee to take proof of the material allegations of the complaint and to report to this court with his recommendations, separately stating his findings of fact and conclusions of law. The matter is before this court on motion for confirmation of the referee's report and for the entry of interlocutory judgment thereon.

The referee does not make a finding of any direct statement and representation by defendant to the plaintiff, prior to their marriage, that he desired and intended to and would have children with her and rear a family, and there is no evidence to that effect. Her testimony is that when she consented to and did enter into the marriage with the defendant she expected to have the normal sexual relations of husband and wife, with the object of having issue of the marriage.

The learned referee accordingly reports, as a finding of fact, that at the time of the marriage the plaintiff relied upon what the referee terms the " implied warranty " inherent in every marriage and believed defendant would cohabit normally with her.

Fraud in inducing one to marry in reliance upon an express promise to have children, which promise the party had no intention of keeping, is, of course, ground of annulment.

The question presented is whether an annulment of marriage may be decreed where there is no express promise to have children, but upon the theory that such a promise is necessarily implied in the consent of the parties to enter into the marriage state, and whether a continual refusal to have children, without any adequate excuse, constitutes a fraud, sufficient to vitiate and annul the marriage.

Viewed in the light of common knowledge and reality, affianced parties do not, generally, formally exact from each other, as a condition precedent to their entry into the connubial state, a promise that they shall have offspring from their contemplated wedlock. Resultant procreation, though not discussed, is taken for granted; is as fully understood by the couple as if openly formally declared and agreed upon. If there is a formal ante-nuptial discussion concerning it and it is made a condition precedent, it is certainly the exception and not the general rule.

In *Mirizio* v. *Mirizio* (242 N. Y. 74, 80–81) Chief Judge HISCOCK says: " But the refusal of husband or wife without any adequate excuse to have ordinary marriage relations with the other party to the contract strikes at the basic obligations springing from the marriage contract when viewed from the standpoint of the State and of society at large. However much this relationship may be debased at times it nevertheless is the foundation upon which must rest the perpetuation of society and civilization. If it is not to be maintained we have the alternatives either of no children or of illegitimate children, and the State abhors either result. The mere fact that the law provides that

physical incapacity for sexual relationship shall be ground for annulling a marriage is of itself a sufficient indication of the public policy that such relationship shall exist with the result and for the purpose of begetting offspring."

There are certain representations of intention implied in the marriage promise, one of basic character being to perform the duties and obligations incident to the marriage status.

In *Coppo* v. *Coppo* (163 Misc. 249) it is said (p. 256): " The law implies proper sex relation in every contract of marriage. Continual refusal after marriage without reasonable excuse therefor is enough to invalidate the marriage."

In *Moore* v. *Moore* (94 Misc. 370, 373) the court said: " Misrepresentations of purpose and intention, whether express or necessarily implied, which constitute a material fact inducing another to act, constitute a fraud affecting the validity of a [marriage] contract induced thereby."

The court further said (p. 373): " So one who goes through the marriage ceremony represents in so many words his intention and purpose to fulfill all the obligations of a husband to the woman he marries."

Marriage is a civil contract, and the courts will annul such a marriage, like other contracts, where the consent of a party to it has been procured by fraud or the misrepresentation of a material fact (*Moore* and *Coppo* cases, *supra; Lewine* v. *Lewine,* 170 Misc. 120).

These views persuade the ultimate conclusion that where parties agree to enter into marriage, there is, in such consent, an implied representation, by each, to have children of the union, and no express representation is required, and that a continual refusal by one of them to have issue of the marriage, without any adequate excuse, constitutes a fraud affecting the validity of the marriage entitling the aggrieved spouse to an annulment of the marriage.

For the reasons stated, I am of the opinion that the marriage in question should be annulled.

Report confirmed.    Judgment for plaintiff.    Interlocutory judgment signed.