Nathan D. Lapham, Off. Ref.
This uncontested action for annulment was referred to me as Official Referee by order dated May 18, 1957, to hear, try and determine, and proof was taken May 29 following, with decision reserved.
This is one of the strangest cases that has come before me in a long experience with matrimonial matters. Plaintiff claims that on a Wednesday defendant asked her if she wanted to marry him and that, in answer to her inquiry “ whether or not he was just playing with” her, he replied: “ No, I am serious; I am not playing with you at all ’ ’, and reiterated this statement when her mother posed the same question. She testified she had known him for a long time and had gone with him to the movies " once in a while ’ They were married in her home by a Protestant minister the following Sunday. She was then 18 and he 22.
*368 There is a wide discrepancy between the plaintiff and her parents as to what occurred following the ceremony that is most puzzling, yes, even irreconcilable. It would appear that something transpired between the parties shortly after the ceremony of which the plaintiff did not see fit to apprise the court. She said that after the wedding, he told hér he was going downstairs for a few minutes; that when he did not return, she searched for him without success, returned home and went to bed and next saw him on the street the following day when she was coming home from work. The mother testified that, although she did not actually see this young couple leave the apartment or return, they told her they were going to a movie and were absent from about 5 o ’clock until midnight. Upon being pressed by the Referee, she admitted she was asleep when they came in but said: ‘ ‘ When they made some noise, I woke up and I saw they were sleeping separately”. Since there is no evidence that she then spoke to them, it would appear that her statement that “ they were not on good terms ” was her conclusion based on what she saw. The father testified that when he returned home late at night, and again in the morning, he saw them sleeping in separate rooms, that when he questioned this young husband as to the reason, he said: “ Well, I made a mistake. I put my foot in it. I didn’t want to get married and that after the bride had gone to work, the defendant got up about 9 o’clock, went out and was not seen again by the father until plaintiff brought him back to the house two days later. The father testified that on that occasion the defendant said “ he was not responsible for his actions and that he did not want to get married; that he didn’t want to live with my daughter.”
Angel Lopez did not leave the neighborhood or make any apparent effort to avoid his wife or her family. Nor did they seem particularly perturbed by what had taken place. Whether for some undisclosed reason the plaintiff had urged the marriage and he had not had the courage to refuse; or whether his moral and mental calibre is such that the ceremony had little significance to him, I cannot say. According to plaintiff’s version, he did not take advantage of his marital status, and they never had relations before or after the wedding. However, her story is so fantastic and so out of joint with that of her parents that I do not believe she was telling the whole truth.
The complaint alleges that “ Prior to the marriage the defendant represented to the plaintiff that he would live and cohabit with the plaintiff in the normal manner of husband and wife in an effort to have issue of the marriage, and to provide *369 a home for the plaintiff herein, and he knew these representations and each of them to be false and intended to deceive the plaintiff.” In the instant case there is no evidence of detailed and specific representations and promises by defendant concerning his intent to cohabit with, and furnish a home for, the plaintiff, but even though he may not have affirmatively asserted his intention to “ cohabit with plaintiff in the normal manner of husband and wife in an effort to have issue of the marriage ”, such a promise is not essential to the maintenance of this action. It is a matter of public policy that marriage exists primarily for begetting offspring and the right to normal and proper sex relations is implicit in the marriage contract. Denial of such relationship by a spouse constitutes fraud. As Chief Judge Hiscock said in the leading case on the subject: ‘ ‘ But the refusal of husband or wife without any adequate excuse to have ordinary marriage relations with the other party to the contract strikes at the basic obligations springing from the marriage contract when viewed from the standpoint of the State and society at large.” (Mirizio v. Mirizio, 242 N. Y. 74, 80-81.) (See, also, Coppo v. Coppo, 163 Misc. 249, 255; De Baillet-Latour v. De Baillet-Latour, 301 N. Y. 428, 431; Fundaro v. Fundaro, 272 App. Div. 825; Moore v. Moore, 94 Misc. 370.)
Accepting for the moment as true the testimony attributing to defendant statements that he was “serious” about this marriage, I believe such an assertion might logically be interpreted as an affirmation of intent to live up to the duties and responsibilities inherent in the marriage contract, that these untutored people would have been justified in considering it a promise to cohabit with, and support plaintiff, and that it was sufficient to bring the proof within the orbit of the allegation.
But the court is faced by the disturbing quality of the evidence. Not only is it a purely family affair, with no disinterested witness in substantiation, but the variances and discrepancies in the testimony of plaintiff and her parents are so pronounced as to shatter confidence in her truthfulness. The burden is on the plaintiff to sustain her claim of fraud by credible evidence. She is young and apparently industrious and the court would feel disposed to release her from this unfortunate union had she presented a forthright and reliable basis for such action. As Mr. Justice Booksteiw said: “ Plaintiff’s plight enlists the sympathetic consideration of the court. The court cannot grant annulments solely because of sympathy with the victim of an unfortunate marriage. The power of the court can be exercised only in those cases in which the statute *370 permits. This case does not fall within the statutory orbit.” (Darling v. Darling, 105 N. Y. S. 2d 475, 478.)
For the foregoing reasons the relief prayed for is denied and the complaint is dismissed, unless within 30 days from the filing of this decision an application is granted permitting the introduction of further proof. Attention of plaintiff’s counsel is directed to the Referee’s decision in Richardson v. Richardson (200 Misc. 778).